## PEOPLE *v.* WILKINSON.

*(Supreme Court, General Term, Fifth Department.   June 2, 1891.)*

1. LARCENY—EVIDENCE—SUFFICIENCY.
   On the trial of defendant for grand larceny, it appeared that he, with two others, rudely thrust themselves between two ladies standing at a shop window, one of whom shortly afterwards found that her pocket-book, containing two $10 notes, was gone. She identified prisoner as the person who was next to and jostled her at the window, at which time he wore a derby hat. When arrested, he had on a cap, but two derby hats were found in his room, and a $10 note was found on his person. Prisoner gave his landlord false accounts as to his occupation and former residence. *Held*, that the jury was justified in drawing the conclusion from these circumstances that the pocket-book in question was taken by defendant.

2. SAME—EVIDENCE—ADMISSIBILITY.
   Witness, a detective, was asked on a trial for grand larceny: "On the night before this larceny, had you heard that there were three pickpockets working this town?" the object being to have the officer explain how he came to be connected with the prisoner's case. *Held*, that the question was in its nature preliminary to something else, and, though having no proper place in the examination, was harmless to defendant, and its admission insufficient as ground for reversal of the judgment.

3. SAME—STRIKING OUT IMPROPER ANSWER.
   On a trial for grand larceny, a detective was allowed to testify that he had known the prisoner for several years in Toronto, and was then asked, "What does he do there?" to which witness answered, "I never knew him to do any legitimate work there. He is hanging around with thieves." There was no objection to the question, but defendant moved that the last part of the answer be stricken out as not responsive to the question, which was done. *Held*, that the question was proper, and the answer improper, but that defendant, having asked that only a part of the answer be stricken out, was bound by the part that remained.

4. SAME—EVIDENCE.
   Defendant, on a trial for grand larceny, was shown to have made certain declarations about himself, his occupation, and residence. *Held*, that the evidence of a person familiar with his antecedents in another town was admissible to disprove the prisoner's statements.

Appeal from court of sessions, Monroe county.

Fred Wilkinson was indicted for grand larceny in the second degree, and from a judgment entered upon the verdict of a jury convicting him thereof he now appeals.

Argued before DWIGHT, P. J., and MACOMBER, J.

*P. Chamberlain*, for appellant.   *George A. Benton*, for the People.

MACOMBER, J.   The indictment charges the defendant with having stolen money from the person of one Elizabeth Pamment, on the 13th day of December, 1890.   Mrs. Pamment, with her daughter and the latter's little boy, were in front of a store on Main street, on the last-named day, looking at the attractions in the windows, when three men came up, one of whom brusquely crowded himself between the women, and shortly thereafter went away.   It was soon discovered by Mrs. Pamment that her pocket-book, containing two $10 bills and some small change, amounting to about 20 cents, was missing.   Her pocket-book was in her pocket on the right side of her dress, and the crowding was done by the man on that side.   She further testifies that after the jostling or crowding of her by the defendant she looked sharply and indignantly at him, and, as she says, "he cowed and looked sheepish."   The person who thus jostled this lady was said by her to have worn a derby hat.   When he was arrested, the defendant had on a cap; but two derby hats were found by the officers in the room where he lodged.   The daughter, Mrs. Sanders, testifies that three fellows came up behind the ladies and the boy, and one of them pushed her a little to one side, and got into her place.   She then says: "I turned around, but noticed enough to know that there were three of them."   On Wednesday before the defendant was arrested, he, with two other persons, had engaged a room on Clinton street, and they represented to the proprietor that they were going to a certain newspaper establishment in the city of Rochester, and, as he understood it, they were going there for the purpose of work.   The account given by these men of themselves at the time where they lodged, and where they formerly lived, was shown to be utterly false.   The defendant gave when arrested his name as Fred Wilkinson, and his occupation as that of a cigar-maker, and said that he came from Detroit.   It is shown by a witness that his real name was Fred Collins, and that he was known in Toronto for several years last past.   The three were shown to be old acquaintances.   There is not, it is true, any direct evidence that the crime charged against the defendant was, in fact, committed. The evidence tending to that result is wholly circumstantial, but it is, in our judgment, none the less convincing; for, as it appears, all the circumstances point strongly to the fact that Mrs. Pamment was deprived of her pocket-book while standing in front of the particular show-window named.   The identification of the defendant is complete as being the person who rudely jostled against the woman at that place.   We think the jury was justified in drawing the conclusion, from the circumstances disclosed to them, not only that Mrs. Pamment lost her pocket-book containing $20 and upwards through the theft of a person in that crowd, but that the defendant was the one who took the money.   The latter conclusion is based largely upon the falsehoods uttered by himself in regard to his name, residence, occupation, and acquaintanceship, and upon the further fact that he had changed his derby hat for a cap, and that a $10 bill was found upon his person.   It is true that this $10 bill is not identified by the complainant as being one of the two possessed by her.   But the jury had, it seems to us, a right to say from the antecedents of the man, as disclosed by the case, that it was in fact one of those bills. It follows, therefore, that the judgment should be affirmed, unless the trial court committed some error prejudicial to the defendant which requires us to grant a new trial.

One of the detectives was allowed to answer this question: *"Question. On the night before this larceny had you heard that there were three pick-*

pockets working this town?" This was objected to by the defendant's counsel as immaterial and incompetent, and the objection was overruled, and an exception was taken. His answer was: "Yes, sir; I was looking for these people. I had other cases on hand, but I kept my mind on those three men." This question, as is contended by the people's counsel, was doubtless asked with a view of having the officer explain how he came to be connected with the case against this defendant and the two other men. It was, in its nature, preliminary to something else, and, though it might be deemed to have no proper place in the examination of the witness, it cannot be said that it did the defendant any harm. A detective, a witness from Toronto, who had shown much familiarity with these persons in that city, after testifying that the defendant's real name was Fred Collins, said that he had known him for seven years in Toronto. He was then asked this question: "*Question.* What does he do there?" This was objected to as incompetent, irrelevant, and immaterial. The objection was overruled, and exception taken by the defendant. The answer was: "I never knew him to do any legitimate work there. He is hanging around with thieves." Counsel for the defendant moved that the last part of the answer be struck out, and it was struck out accordingly by the court. If it had been moved that the whole answer be struck out, as not being responsive to the question, the entire motion, doubtless, would have been granted. There was no error in the question. The answer was not responsive, or at least was incompetent, and the only remedy of the defendant's counsel was a motion to strike out. The defendant's counsel also excepted as follows: "To that portion of the charge wherein the court says the evidence of the detectives that were sworn was competent in showing the character, occupation, and previous reputation of the defendant." Upon this subject the judge charged the jury as follows: "Now, you have the testimony of Officer Cuddy from Toronto, who said he knew this man in Canada; in fact knew these three men; knew this defendant as an *habitué* of pool-rooms and drinking places there; had known him for years previous, and that his name was Collins. Now, I deem it my duty to tell you, in relation to this testimony, that, if competent at all, it is pretty close to the line. In cases of this character it is almost always, if not always, impossible for officers of the law to prove by direct testimony,—that is, by people who saw the act, and knew sufficient of the parties to be able, by word of mouth, to make a story so complete as to prove all that is necessary to secure the conviction of the prisoner charged with crime. It is necessary that full effect shall be given to every circumstance that is competent, to the end that the wheels of justice may not be blocked by captious objection raised on the part of the counsel; and, in that view, it seems that this evidence is competent to show the character and previous occupation and reputation of these men, in contrast with the story and statements which were made to the officers here." The evidence to which the learned county judge refers in this portion of his charge was adduced for the legitimate purpose of disproving the declarations made by the accused at or about the time of his arrest under this charge. We do not understand that the rule is questioned that, when a party is accused of crime, and he denies or undertakes to explain away the case against him, the falsity of such allegations in his own behalf may be shown by persons acquainted with his private history, occupation, and residence. This is not affirmative evidence to show bad character or reputation. It is ordinarily given in a case to contradict the declarations made by the defendant in his own behalf. The expression used by the learned county judge, that the evidence was competent to show the previous reputation of the men, was inadvertent undoubtedly. The jury, however, could not, as it seems to us, have been misled by it, and consequently it was not such an error as would justify this court in granting to the defendant a new trial. The foregoing are the only exceptions in the case which are worthy of consideration. On the whole, we think the judgment should be affirmed.