## PEOPLE v. KELLOGG.

(Supreme Court, Appellate Division, First Department. June 23, 1905.)

1. LARCENY—INDICTMENT—DESIGNATION OF PERSON INJURED—MATERIALITY.

Under Code Cr. Proc. § 281, providing that when an offense involves the commission of a private injury, and is otherwise described with sufficient certainty, an erroneous allegation as to the person injured is immaterial, the fact that an indictment alleges larceny from a corporation, whereas the corporation was not the owner of the money taken, is immaterial.

2. SAME—DUPLICITY—SEPARATE COUNTS.

An indictment for larceny, the first four counts of which allege the money to have been the property of a certain individual and divers other persons unknown, and charge embezzlement at common law, which is made larceny by Pen. Code, § 528, subd. 2, while the next two counts are the same, except in that they allege a corporation to have been the owner of the property, whereas the seventh count is a common-law count for larceny, and the eighth charges the formation of a conspiracy to obtain money by false representations and the obtainment of the money pursuant to the conspiracy, all the counts of which specify the larceny of the same sum of money and name the same persons as defendants, but differ in their allegations as to the parts played by the several defendants in the transaction, does not charge more than one crime, within the prohibition of Code Cr. Proc. §§ 278, 279, requiring indictments to charge but one crime, but permitting that crime to be charged in separate counts.

3. CRIMINAL LAW—ELECTION—MOTION AT OPENING.

Where an indictment charges the same offense in a different manner in several counts, a motion to compel the prosecution to elect at the opening of the trial upon which count it will proceed is properly denied.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Indictment and Information, § 427.]

4. SAME—MOTION AT CLOSE.

It is discretionary with the court to deny a motion made at the close of the people's case to compel the prosecution to elect on which count of an indictment, charging the same offense in different counts, it will stand, and its action in so doing is not error, in the absence of prejudice to defendant.

5. SAME—PRINCIPALS—WHO ARE.

Under the express provisions of Pen. Code, § 29, a person concerned in the commission of a crime, whether he directly commits the criminal act or aids and abets in its commission, is a principal.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 71–86.]

6. LARCENY—WHAT CONSTITUTES—MISAPPROPRIATION OF MONEY.

Persons who induce members of the public to subscribe money under a written contract providing that the money subscribed is to be credited to the subscriber's account and to be invested in a wheat deal do not acquire title to, but become bailees of, the money for the special purpose of speculating in wheat, and, in case they misappropriate the money, are

guilty of larceny and embezzlement both at common law and under Pen. Code, § 528, subd. 2, declaring bailees, trustees, etc., having control of money or property, who appropriate the same to their own use, guilty of larceny.

**7. SAME—INDICTMENT—VARIANCE—DESIGNATION OF PERSON INJURED.**

Under Code Cr. Proc. § 281, providing that an erroneous allegation of an indictment as to the person injured is immaterial, evidence of the larceny of money from an unnamed person is sufficient to support an indictment charging the larceny of the money from a certain individual and divers other persons to the grand jury unknown, although there is no evidence of a larceny from the individual named.

**8. SAME—EVIDENCE—INTENT.**

In a prosecution for larceny, where the evidence shows a connected, continuous scheme pursuant to which defendant formed a corporation and associated others with him for the purpose of swindling the public by inducing members thereof to intrust the corporation so formed with money to speculate in wheat and other ventures, which money was in fact misappropriated by defendant and his companions, evidence as to when the first payment from the business of the corporation was made was competent as characterizing the offense charged, and on the questions of guilty knowledge and intent, both under a count charging conspiracy and under others charging larceny.

Appeal from Court of General Sessions, New York County.

James B. Kellogg was convicted of grand larceny in the first degree, and appeals. Affirmed.

The indictment under which the defendant was tried and convicted contained eight counts, the first of which is as follows:

"The said Myron L. Bernard, late of the city of New York, in the county of New York aforesaid, on the 3d day of April, in the year one thousand eight hundred and ninety-seven, at the city and county aforesaid, being then and there a person authorized by agreement to hold and take possession, custody, and control of the sum of one hundred and forty-nine thousand eight hundred and thirty dollars and thirty-two cents, thereto paid and delivered to him by Francis J. Winn and divers other persons to the grand jury aforesaid unknown, under and upon the agreement of him, the said Myron L. Bernard, to use, apply, and invest the aforesaid sum of $149,830.32 in the purchase and sale of a certain article of trade and commerce, to wit, wheat, for and on account and for use and benefit of the said Francis J. Winn and said divers other unknown persons, in, by, and for a certain pool and combination composed and made up of and constituted by the said Francis J. Winn and divers other unknown persons, which said agreement, pool, and combination was then and there known and designated by all of the parties aforesaid as 'Special Wheat Combination No. 2,' and upon agreement of him, the said Myron L. Bernard, to make just and true account to the said Francis J. Winn and said divers other unknown persons of the said sum of money and the investment and disposition thereof, and not to use, invest, or apply the said sum of $149,830.32 to any use or purpose other than the purchase and sale of wheat as aforesaid; and the said Myron L. Bernard, as such person so authorized as aforesaid by agreement as aforesaid to hold and take possession, custody, and control of the said sum of $149,830.32, then and there having in his possession, custody, and control the said money and personal property of the said Francis J. Winn and said divers other persons, the true owners thereof, under and by virtue of the agreement aforesaid, did feloniously appropriate the sum of ninety-seven thousand and thirty dollars and thirty-two cents, lawful money of the United States of America, and of the value of $97,030.32, part and parcel of the said sum of money then and there in his possession, custody, and control under and by virtue of the agreement aforesaid, to his own use and to the use of persons not then and there the true owners or entitled to the benefit thereof, with intent to deprive and defraud the said Francis J. Winn and said divers other unknown

persons of the same, and use and benefit thereof; and the said sum of $97,-030.32 of the goods, chattels, and personal property of the said Francis J. Winn and said divers other unknown persons did then and there and thereby feloniously steal; and the said Samuel Keller and the said James B. Kellogg, otherwise called Jacob Keller, both late of the city and county aforesaid, at the time of the committing of the felony, misappropriation, and larceny aforesaid, in the manner and form aforesaid, at the city and county aforesaid, were, and each of them then and there was, feloniously concerned in the commission of the said felony and larceny, against the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity."

The second is substantially the same as the first, except that it is alleged therein that Samuel Keller, one of the principals in the first count, was the person to whom was intrusted the custody and control of the money.

The third count is substantially the same as the first, except that it alleges that Myron L. Bernard, instead of being personally and individually intrusted with the custody of the moneys, was the president of a corporation known as the "E. S. Dean Company," and as such president, and acting for and representing the corporation, and having actual and effective custody of the corporation, was authorized by agreement to hold and take possession, custody, and control of the money, the property of Francis J. Winn and divers other persons; then alleges that he did, as such president, make the misappropriation charged in the first count, and that the defendant, Kellogg, was concerned in the commission thereof.

The fourth count is substantially the same as the third, except that instead of alleging that Myron L. Bernard, as president of the E. S. Dean Company, had custody of the moneys, it stated that the defendant, Kellogg, as manager and agent of the E. S. Dean Company, was the principal and made the misappropriation, and that Kellogg and Bernard were feloniously concerned in the commission of it.

The fifth count charges that Bernard, being the president of the E. S. Dean Company, a corporation, and having in his custody $97,030.32 of which the said corporation was the true owner, misappropriated that sum to his own use, and that Keller and the defendant, Kellogg, were feloniously concerned in the commission thereof, and did willfully and feloniously aid and abet in its commission.

The sixth count charges that Keller was the agent and general manager of the E. S. Dean Company, a corporation, and that he had the custody of $97,030.32 of the corporation's money; that he misappropriated and took said moneys from the said corporation, and that Bernard and Kellogg were feloniously concerned in the commission of such offense.

The seventh count is a common-law count for larceny, and charges that Bernard, Keller, and Kellogg stole from Francis J. Winn and others $97,-030.32.

The eighth count charges that the said Keller, Kellogg, and Bernard formed a conspiracy to obtain money by means of false representations, and that Francis J. Winn and others unknown relied upon such misrepresentations, and that by means thereof they obtained from the said Winn and others unknown $97,030.32, which they appropriated to their own use.

The defendant demurred to the indictment upon the ground "that more than one crime is charged in the indictment within the meaning of sections 278 and 279 of the Code of Criminal Procedure." The demurrer was overruled.

At the opening of the case for trial the defendant moved that the district attorney be compelled to elect upon which count the defendant was to be tried. This motion was denied. It was renewed at the close of the people's case, and again denied. At the close of the entire case the district attorney elected to go to the jury upon the first six counts of the indictment. After the summing up by counsel for the defendant and the district attorney, the court, upon its own motion, withdrew the fifth and sixth counts from the consideration of the jury, thus leaving the first four counts of the indictment. The jury rendered a verdict against the defendant of grand larceny in the first degree. The defendant's counsel thereafter moved for a new trial upon

the minutes; the motion was denied, and the defendant was sentenced to imprisonment in the state's prison at hard labor for the term of seven years and six months.

Argued before HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Max D. Steuer, for appellant.
Edward Sandford, for respondent.

HATCH, J. Upon this appeal the defendant brings up for review the question raised by the second ground of demurrer interposed by him, namely, whether more than one crime is charged in the indictment, within the meaning of sections 278 and 279 of the Code of Criminal Procedure. It is manifest that the indictment charges but a single offense, to wit, the larceny of $97,030.32, alleged to be the property of Francis J. Winn and divers other persons to the grand jury unknown. The first four counts charge in terms what would have been the offense of embezzlement at common law, which is now made larceny pursuant to the provisions of subdivision 2 of section 528 of the Penal Code. The fifth and sixth counts are the same, save that the corporation was alleged to be the owner of the money. Such fact, however, is immaterial, even though it be conceded that the ownership of the money was not vested in the corporation. Section 281 of the Code of Criminal Procedure provides:

"When an offence involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

It is evident that the whole structure of this indictment, including as well the common-law and the conspiracy count, states but a single offense, in several counts, committed by different means. Under well-settled authority, such pleading is sustained as a good pleading both at common law and under the Code. The whole subject is thoroughly discussed in Taylor v. The People, 12 Hun, 212; Hawker v. The People, 75 N. Y. 487; People v. Adler, 140 N. Y. 331, 35 N. E. 644; People v. Wilson, 151 N. Y. 403, 45 N. E. 862. It would serve no useful purpose to restate the principles and reasons upon which the doctrine rests. It is sufficient now to say that these authorities abundantly sustain the method of pleading which has been adopted in this case, the sole purpose of which seems to have been to meet possible variances and defects of evidence in establishing some one of the necessary ingredients of the crime charged in particular counts of the indictment. It was said in People ex rel. Tweed v. Liscomb, 60 N. Y. 559, 19 Am. Rep. 211:

"In theory, every count in an indictment is for a distinct offense, but in fact, as is very well understood, in most cases several counts are resorted to, and the same offense is stated in several forms and different circumstances to meet the evidence adduced upon the trial. * * * There is no objection to stating the same offense in as many different ways as may be deemed expedient. It cannot mislead the accused, or embarrass him in the defense, or expose him to cumulative punishment."

These words are applicable to this indictment, as a casual reading shows that but one transaction is embraced within all of the counts, and charge larceny in various forms by different means and from different persons; but the whole, when combined, shows that but a single offense is charged or attempted to be charged. The eighth count charges a degree of the same offense, and is therefore properly united with the other counts. People v. Rose (Super. Buff.) 15 N. Y. Supp. 815. The demurrer to the indictment was therefore properly overruled.

The refusal of the court to compel the district attorney to elect at the opening of the trial upon which count of the indictment he would proceed was clearly proper, as was also the ruling at the close of the people's case. When the first motion was made it could not be known what the proof would show with respect to the manner and method in which the offense was committed, and the prosecution at that time could not be presumed to know which count of the indictment would most appropriately describe the offense as proved. At the close of the people's case, the method and manner in which the offense was committed had been described, and the court could then have compelled an election, if one was required, without prejudice to the people's case. It was discretionary, however, with the court to deny the motion to compel an election at that time. It is not made to appear wherein or how the defendant was prejudiced by this ruling of the court. The refusal, therefore, to compel an election at that time furnishes no ground of error.

As all the counts of the indictment except the first four were withdrawn from the consideration of the jury, it is not needful that we further refer to them. Their consideration was only necessary in disposition of the demurrer to the indictment. In these four counts, although different persons as bailees of the money, the subject of the larceny, are specified, yet the averments in this form were made to meet the varying phases of the proof as it might be developed upon the trial, and as such, as we have seen, were authorized. These counts of the indictment charge the different persons named therein as principals in the offense therein charged. Pen. Code, § 29; People v. Du Veau (Sup.) 94 N. Y. Supp. 225.

This brings us to a consideration of the sufficiency of the evidence to establish the offense charged in the first four counts of the indictment. It appears that about the close of September, 1896, the defendant, Kellogg, was the manager of a business operated under the name of "E. S. Dean & Co.," which he claimed was owned by his wife. This business consisted in procuring investments in "discretionary pools" for dealing in the purchase and sale of stocks, and was conducted by means of advertisements circulated throughout the country, in which it was advertised that profits of from 300 to 400 per cent. would be secured by those who invested in the business. By these means E. S. Dean & Co. had received a large sum of money, some of which the defendant had appropriated to his own use, and some had been used for the payment of "dividends" claimed to have been earned through investments. In that month

the defendant procured Keller and Weiman to come into the business, under an agreement that Kellogg should have the first $10,000 out of the concern, and the money left, after paying expenses and some for dividends to be sent to investors, should be equally divided between the three. These persons formed a corporation under the laws of the state of New Jersey, with a nominal capital of $1,000,000, and took over the business formerly conducted by the defendant. Bernard, a brother-in-law of Keller, was elected president. . After the organization of the corporation, circulars were sent out to the "Rubes," as the defendant called the investors of the old company, for permission to allow their accounts to be transferred to the corporation, and some were thus transferred. The defendant drafted new circulars, describing in glowing language the opportunity for investments that had been made under what was called the "Dean Safe System of Speculation," stating therein that there was no possibility of loss, that immense profits had always been made, that a dividend was always declared bimonthly, and that investors were assured of a return of from 30 to 120 per cent. By means of these circulars, investors and credulous people were induced to contribute money to various schemes, so that in six months the corporation took in nearly $500,000. In accordance with the terms of the circulars, dividends were to be paid out every two weeks. The defendant and his associates, however, determined the amount which should be paid as dividends. The scheme was progressive; dividends claimed to have been earned in the first pool were paid from the contributions to the second. In the main, however, the moneys were divided between the persons named in the indictment, in equal shares, from time to time as received. .

The last of the pools or combinations to which the public was asked to contribute was called "Special Wheat Combination No. 2." Invitations for this investment were sent out March 18, 1897. The circular by which the subscriptions were obtained was formulated by the defendant, and, as a result of this circular, there came into the company within a few days $150,000. This circular is not printed in the record, and appears to have been lost. The proposal was to form a pool to purchase wheat in the market, subsequently sell the same, and divide the profits among those who contributed to the pool. Most of the money which was received was deposited by Bernard, the president of the company, in the Leather Manufacturers' Bank. The contributions to this pool continued to come in up to April 3d. Some of it was used for the payment of dividends upon other transactions claimed to have taken place, but the sum charged in the indictment to have been misappropriated was drawn out of the bank and divided among the defendant and his associates. There was no actual transaction in the purchase of wheat in this pool or stocks in other pools which were formed. The defendant went through a form with a broker of purchasing and selling wheat, known as a "wash sale," wherein the broker purchased and sold for the defendant and his associates an immense number of bushels of wheat. The actual transaction was solely

theirs; nothing was paid save that the broker received his commissions in the transaction, which amounted to a very considerable sum. It had been evident for some time prior to the issuance of the last circular that a crash in the business was at hand, and the wash sale of wheat was for the purpose of showing a loss, in order to account for the money which had been received. Such was the general character of the business conducted by this corporation.

The great bulk of the evidence as to the purpose of the business and the method of its conduct is found in the testimony of Keller, one of the persons charged in the indictment as having the custody of the money, who was associated in business with the defendant. His testimony, however, was abundantly corroborated both by the books of the corporation and by the testimony of other witnesses. The defendant, while not an officer of the corporation, was shown to have been an active participant in the conduct of its business, and was the inspiring genius of all the matter contained in the circulars. He shared in the money which was received, including that of the last pool, and was quite indignant over the payment of the last dividends and the omission to take other receipts which came by mail, and which were found in the safe when the sheriff took possession of the concern.

This summary of the evidence is sufficient for the disposition of this appeal. The details are spread out in the record, and abundantly support this outline of the general scheme. It is claimed, however, that the evidence only establishes a conspiracy and combination to procure by device and trick the money paid into the corporation, and that such proof is only appropriate to the offense recognized at common law as false pretenses, and is not sufficient to establish the crime of embezzlement; that no count in the indictment remains charging the offense of larceny under subdivision 1 of section 528 of the Penal Code, which makes the obtaining of money by false pretenses the crime of larceny under the circumstances therein specified; in consequence of which it is claimed that "the act stated was not proven, and the act proven was not stated." Such contention is not sustained. It appears by the testimony that the money which was paid in upon the several schemes was delivered pursuant to a written contract between the investors and the corporation. The form of this contract is as follows:

"I hereby enclose (so many) dollars to be credited to my account to be invested in Combination No. ——— to be operated for (a certain period of days) in wheat (or sugar, or whatever the stock or commodity might have been). My liability is strictly limited, while my limits on profits is unlimited."

By the terms of this contract it is made to appear that the money contributed by the investor was for a special purpose as therein specified, and the corporation or individuals took this money for the particular purpose. Assuming it to have been a perfectly legitimate transaction, it is manifest that the corporation and the individuals would have taken such money and held the same for investment in the particular enterprise. No authority was conferred upon the corporation or the individuals to use it for any other

purpose, and, if used in any other manner than as an investment in the particular scheme, it would be a diversion and misappropriation of the moneys. The contribution in this form did not pass title to the moneys; it remained in the contributor, and did not pass to the corporation or the individuals. They held the money in a fiduciary capacity, to be used for a special purpose for the benefit of the contributor, and for no other. Such condition constituted the corporation or the persons who received the money bailees of the same under a special contract, to be used for the particular purpose. 3 Am. & Eng. Enc. of Law, 733 et seq. This doctrine is clearly established by the case of People v. Miller, 169 N. Y. 339, 62 N. E. 418, 88 Am. St. Rep. 546. That case disclosed a scheme quite similar to the present. The purpose and object of each scheme was alike, in that the means used were quite similar, and the purpose in each was to despoil the investor of his money. The indictment in the Miller Case under which it went to the jury was in the common-law form for larceny. The court was able to sustain a conviction thereunder, based upon the ground that the investor therein never parted with title to the money, and that the proof in that case would not have justified a conviction under counts for larceny committed by false pretenses or by embezzlement. With reference to this subject, the court said:

"It would be difficult to show that the defendant in this case made any material false statement concerning any existing fact. His statements were all promissory in nature and character. He represented to the public very little, if anything, concerning any fact existing at the time. His statements consisted in persuading the investors that he could and would obtain for the use of their money large profits in the form of dividends. These statements were all in the nature of promises, and, although they were very effective in producing the result desired by the defendant, they would hardly constitute the basis for a criminal charge of obtaining money by false pretenses."

In this case the representation was not only of a promise to earn large dividends, but of an existing fact, to wit, the formation of a pool for the purchase of wheat, and it was represented by the defendant that the money which should be contributed thereto would be used for this particular purpose. This clearly was a representation that a pool was formed for the purpose of dealing in a commercial commodity, and that the money contributed to that pool would be used for that particular purpose, and none other. Thus this case is made much stronger than the Miller Case.

It is manifest, also, that the facts in this case would have supported a conviction under a common-law count of larceny. The Miller Case recognized that facts may exist which would support a conviction under either count. Upon this subject it was said:

"Moreover, the same act may sometimes amount to larceny at common law and embezzlement under the statute, and, when it does, the offender may be prosecuted upon either charge, at the option of the people."

The arrangement under which the money was contributed to this pool made the defendant and his associates custodians of the money for the particular purpose. They occupied a fiduciary relation to the investors, the title to the money remained in the latter, and

the defendant and his associates were bailees of the same for use in the purchase of wheat. Consequently, a misappropriation of those moneys by the defendant and his associates constituted a larceny of the same at common law, and also constituted the act an embezzlement of such moneys. The proof, therefore, brings the offense within subdivision 2 of section 528 of the Penal Code, and within such offense as charged in this indictment.

While it is true that the written agreement under which the money was received under the so-called "Wheat Combination No. 2" is not found in the record, yet it was testified by Bernard, the president of the corporation, who was sworn on behalf of the defendant, that the moneys deposited in this combination were so deposited under the written contract as hereinabove stated. The relation, therefore, which the defendant occupied to this transaction, and the character under which the money was held, were clearly made to appear by testimony adduced by him. The proof is sufficient to show that moneys were contributed to the amount specified in the indictment to this so-called "Combination No. 2." Indeed, that money was so deposited is not disputed by the defendant. The indictment charges that money was contributed by Francis J. Winn and divers other persons to the grand jury unknown. It is claimed that there is no proof showing that Winn contributed any money to this combination. Assuming this to be true, it did not affect the validity of the indictment, nor militate against the sufficiency of the evidence to justify a conviction of the defendant. At common law such a pleading was good, and justified a conviction where the indictment charged that larceny was committed against a named person and other persons to the jury unknown (Bishop on Crim. Procedure, § 495); while under the Code, as we have already observed, such a pleading is good, and proof of the larceny of the money from an unnamed person unknown is justified where the evidence shows that the offense was in fact committed. Here the proof upon such subject is abundant. In addition, it was stated by the prosecution, and acquiesced in by the defendant, that the books showed that a contribution was made to such pool by Francis J. Winn. The books were before the court upon the trial; they have been lost since. It will therefore be assumed upon the proofs, from the statement and acquiescence of the defendant therein, that Winn in fact had made a contribution to the combination; so that not only did the proof justify a conviction as to contributions made by unknown persons, but the larceny was also established in literal form as averred.

It is further insisted that evidence was given in the case for the purpose of establishing the offense as charged in the other counts in the indictment, especially the eighth count, which was improper in establishment of the offense charged in the first four counts; and that, as the last four were withdrawn from the consideration of the jury, and such testimony was permitted to remain in the case, it was essentially prejudicial to the defendant, and the judgment should be reversed for that reason. If the claim were true, the

result might follow. The learned counsel for the defendant has called to our attention a particular specimen of such evidence and ruling, and does not claim that any others differ therefrom. Upon such subject the prosecution asked: "Q. When was it that the first payment from the business of the corporation was made?" Then followed a colloquy between the court and counsel for the prosecution, in which the former inquired how that matter became material upon the counts charging misappropriation. The prosecution replied:

"It is not. It is material upon the count charging conspiracy, and I suppose that under the decision in People v. McKane in 143 N. Y. 455, 38 N. E. 950, it also is material even on the larceny charge, as being a part of the conspiracy which led up to the commission of the larceny. Of course, the larceny as alleged is away down in March, 1897—all of this is not material—but I claim the entire conduct of the business, both as to the company and corporation, is material, distinctly on the conspiracy charge, because the charge in the conspiracy count, being the eighth count in the indictment, is that Kellogg, having heretofore conducted a business of a certain sort under the name of 'E. S. Dean & Co.,' on October 12th, and prior thereto, conspired with the other defendants to merge the business into a corporation, and thereafter conducted it so that it led up to the swindle of the closing of their business in March, so that it seems every detail and step in the business is material under that count."

The court allowed the question, to which an exception was taken. It does not appear from anything said by the court at that time that the evidence was limited to the particular count charging the conspiracy, or holding that it was not competent upon the charge contained in the first four counts. The prosecution seemed to claim that it was material on the larceny charge, and certainly so as to the conspiracy charge. We are of opinion that the evidence was competent upon both. The proof tended to establish a connected continuous scheme devised and conducted by the defendant alone prior to the formation of the corporation, the method in which its business was conducted, and the effort made by the defendant to induce the other persons named in the indictment to join with him in a continuation of the same scheme. The proof abundantly established in this respect that the defendant has been successful in procuring large sums of money both in the business conducted by him and in that subsequently conducted under the form of a corporation. There was no break in the proof. It was therefore competent as characterizing the offense charged in the indictment, and bearing upon the guilty knowledge and intent actuating the defendant in obtaining control of the money. This was an essential ingredient of the crime of larceny, and the people were entitled to all the proof connected with the transaction and the method of doing business, both before, and it may be after, the consummation of the offense. Such rule has been repeatedly recognized. Mayer v. The People, 80 N. Y. 364; People v. Shulman, Id. 373, note; People v. Sharp (opinion by Peckham, J.) 107 N. Y. 427, 466, 14 N. E. 319, 1 Am. St. Rep. 851. A striking illustration of the doctrine is also found in Commonwealth v. Robinson, 146 Mass. 571, 16 N. E. 452, where the rule was applied in a capital case.

This discussion covers all of the grounds upon which the appellant relied to secure a reversal of this conviction. We are of opinion that such grounds are all unfounded, and that the evidence abundantly justified the conviction upon the counts under which the court finally submitted the case to the jury. The other counts of the indictment might well have been permitted to remain, as a careful examination of this testimony satisfies us of the guilt of the defendant, and also that the several counts charging the offense would have justified the jury in convicting the defendant under any one of them, had they all been permitted to remain. Their withdrawal, however, did not prejudice the defendant, and, as the first four counts in the indictment charge an offense in accordance with the provisions of the Code defining the crime of larceny, and the evidence was sufficient to justify a conviction thereunder, it follows that the judgment should be affirmed.

PATTERSON, O'BRIEN, and LAUGHLIN, JJ., concur.