## Commonwealth v. Buck et al.

*C. William Kraft, Jr.,* Assistant District Attorney (with him *William J. MacCarter,* District Attorney), for Commonwealth.

*John E. McDonough* (with him *James A. Cochrane),* for defendants.

MacDade, J., Oct. 16, 1929.—The defendants, Joseph Jacono, Anthony Sorgi and Patsy Di Santi, were convicted of larceny, receiving stolen goods and of violating the Act of May 1, 1919, P. L. 99, pertaining to a felonious taking and carrying away of an automobile, either as principal or as assessory thereto before or after the fact, or of receiving a stolen automobile with knowledge, while in other cases Joseph Jacono, Tony Olive and Patsy Di Santi were convicted of larceny and receiving stolen goods, while one James Buck in all of the said cases heretofore pleaded guilty.

In the former case the defendants moved for a new trial and assigned the following reasons therefor:

1. The learned trial judge erred in not requiring the Commonwealth to elect to try and prosecute between the charges of larceny and receiving stolen goods in one indictment and violation of the Act of 1919 in another indictment.

2. The defendants could not be convicted of violating both of these laws where the same act only was involved.

3. The learned trial judge erred in refusing to withdraw a juror on the motion of the defendants for reasons set forth in the transcript of the record as follows: *(a)* Because the assistant district attorney read to the jury the deposition or statement of one Tony Olive as affecting the defendants in this case.

4. The learned trial judge erred in refusing to withdraw a juror and admitting the evidence of Mullen respecting an alleged conversation between the defendant Sorgi and the said Mullen respecting an offense with which the defendant . . . did not here stand charged.

5. The learned trial judge erred in permitting the prosecutor to read to the jury all of the statements of all of the defendants without instructing the jury that such statements only affected the party making them.

6. The learned trial judge erred in not withdrawing a juror upon motion of the defendants because of statements made by the district attorney that the defendants were gangsters from Marcus Hook and pleading with the jury not to turn these gangsters from Marcus Hook loose.

7. The learned trial judge erred in not withdrawing a juror upon motion of the defendants because the district attorney said to the jury that the defendants had lied three times in their testimony.

8. The learned trial judge erred in refusing to withdraw a juror because the district attorney said to the jury, "Is it fair to James Buck and his mother to let these boys (the defendants) go scott free and punish Buck?"

9. The learned trial judge, erred in other respects, as admitting testimony of objection of the defendants, and their objections will appear from the record.

10. The learned trial judge erred in respect of the charge to the jury, *(a)* defining knowledge of prior theft as regards the offense of receiving stolen goods; *(b)* that the jury has to co-operate with the judge in administering justice—"we don't want justice to fail in this county of ours;" *(c)* in charging the jury that the defendants could be convicted of larceny and receiving stolen goods and also violating the Act of 1919 as indicted; *(d)* other comments of the court respecting the execution of the statements offered in evidence and the statements that the defendants commenced to break and tell on each other; *(e)* the interrogation of the court to the jury as to how Di Santi escaped receiving stolen goods; and *(f)* can a jury be befuddled into acquitting him, and how can he escape conviction of the felony of which he stands charged; *(g)* to the argument of the character of the charge of the court as defined by the court's own language, "All of this we are now 'preaching' to you, relating to you as persuasive of conviction."

In the other cases, similar motions for new trials were filed and reasons given in support thereof are as follows:

"1. The learned trial judge erred in not continuing the cases of the defendants to try by a different panel, in view of the statements made by the court in the presence of this panel, respecting the defendants, Jacono and Di Santi.

"2. The learned trial judge erred in admitting the written statements that the alleged Jacono and Di Santi were guilty, in the absence of evidence as to *corpus delicti.*

"3. The learned judge erred in admitting the statements of the defendants, in the absence of any evidence showing the ownership of the property alleged to have been stolen."

We summarize the reasons for new trials in the above cases to be in effect the following:

1. Remarks of the district attorney.

2. Charge of the court.

3. Admission of confessions.

4. District attorney not electing on what indictments he would prosecute when defendants were charged with offenses of larceny as well as felony under the Act of 1919, making it a felony to feloniously take and carry away an automobile belonging to another.

5. Attacking the credibility of the defendant, Anthony Sorgi.

6. Should an indictment be quashed because it fails to name definitely the owner of the property alleged to be stolen?

There were other reasons, but as we consider them as of little importance, we shall confine ourselves to what we believe to be the real reasons why the defendants ask for new trials, as thus summarized above.

It is our intention, however, to refuse these motions for new trials, as we did formally at bar, and this written opinion is prepared and filed of record to conform to our orders at bar when we dismissed the oral motions for new trials on the day when the defendants were convicted, and subsequently orally dismissed the motions for new trials when the defendants were sentenced after the defendants, through counsel, had filed written motions for new trial and assigned reasons therefor.

Therefore, all the motions are refused, and we believe it is within our discretion to thus act: Com. v. Nelson, 294 Pa. 544.

We believe our conclusion is plainly justified by the evidence. A careful reading of the entire record and of the charges satisfies us that the case was fairly presented and that the criticism directed towards the rulings of the court and the charges are unwarranted. We see no error which justifies a new trial as to any of these defendants, and, therefore, the motions are dismissed.

To amplify our justification in refusing these motions, we take up the above summarization in order; for instance:

*1. Remarks of the district attorney.*

The motion for the withdrawal of a juror, based on the remarks of the trial judge to the jury or of the district attorney, will not be allowed when the jury has been instructed to disregard the remarks complained of: Com. v. Taleff, 28 Dauphin Co. Reps. 64; Com. v. Jordanoff, 28 Dauphin Co. Reps. 71; Com. v. Cicere, 282 Pa. 492; Com. v. Dyminski, 79 Pa. Superior Ct. 500; Com. v. Legins, 285 Pa. 97.

Indeed, a conviction of a defendant for violation of the liquor law was not set aside because the trial judge had in another case lectured the jury for having acquitted the defendant: Com. v. Lowenburg, 86 Pa. Superior Ct. 202.

*2. Charge of the court.*

A judge may express his opinion regarding the evidence, and in some cases it may be his duty so to do, but this should be done so as not to withdraw the evidence from the consideration and decision of the jury: Com. v. Johnson, 89 Pa. Superior Ct. 439.

The extent to which a trial judge in charging the jury should go into reviewing, analyzing and commenting on the evidence in a criminal case depends largely upon the circumstances and nature of the case: Com. v. Wilson, 76 Pa. Superior Ct. 147.

A conviction of murder will not be reversed because the judge in his charge impresses upon the jury the seriousness of their responsibility as a branch of the court with important duties to perform: Com. v. Morrison, 266 Pa. 223.

When the charge of the court was fair, it will not vitiate a just verdict because the judge expressed his opinion upon features of the case: Com. *v.* Rose, 74 Pa. Superior Ct. 96.

*3. Admission of confessions.*

Ordinarily, proof of independent crimes, having no connection with the one on trial, cannot be received unless it tends to establish the guilt of the defendant of the particular offense under consideration by the jury, though, if such relation is shown, the proof is admissible: Com. *v.* Mellor, *supra;* Com. *v.* Luccitti, *supra;* Com. *v.* Quaranta, 295 Pa. 264.

It will be noted, however, that the statement complained of in the present case was a part of the voluntary confession to the police officer (Com. *v.* James, *supra;* see, also, Com. *v.* Parker, 294 Pa. 144), and was merely an introductory declaration of a fact made by the defendant preceding his description of what had occurred at the time of the killing of Mrs. Coles. The conversation as a whole with Inspector Connelly was admissible. It began with these sentences: "I warned him that anything he might say would be used as evidence against him at the time of his trial in court. He was remorseful, and said he was sorry for anything that he had done. It was not the first time he had done a thing of this kind. He had done the same thing in another town." The entire narration of defendant, bearing upon the crime with which he was charged, was admissible, and the repetition of all that he said in reference thereto cannot be considered as an attempt on the part of the Commonwealth to prove an independent and distinct offense to his prejudice, which has met with condemnation in some of our cases: Com. *v.* Weston, 297 Pa. 382.

On the trial of the indictment for larceny and receiving stolen goods, while evidence of other crimes is not in general admissible, it may be received to establish a motive and guilty knowledge and purpose. Thus, the evidence of boys whose loot was purchased by the receivers to show the college of thievery may be established as a chain of crime: Com. *v.* Elias & Johns, 76 Pa. Superior Ct. 576.

*4. District attorney not electing on what indictments he would prosecute when defendants were charged with offenses of larceny as well as felony under the Act of 1919, making it a felony to feloniously take and carry away an automobile belonging to another.*

An indictment for embezzlement, larceny and receiving stolen goods, in different counts, and a general verdict of guilty, with sentence thereon, was sustained: Com. *v.* Samson, 76 Pa. Superior Ct. 226.

Defendant was convicted of highway robbery. The court below refused to quash counts in the indictment, on which defendant was not sentenced, and, therefore, was not injured. A motion in arrest of judgment was denied and the conviction affirmed: Com. *v.* John Doe, *alias* Ross, 79 Pa. Superior Co. 162.

*5. Attacking the credibility of the defendant, Anthony Sorgi.*

The defendant's credibility can be attacked, if he takes the witness-stand in his own behalf, by offering the record, or an exemplified copy of his previous conviction of felony or other crime affecting his credit as a witness. But his character cannot be attacked unless (1) he or his attorney have asked questions of the witness for the prosecution with a view to establish his own good reputation or character; or (2) he has given evidence tending to prove his own good character or reputation; or (3) he has testified at such trial against a co-defendant charged with the same offense: Com. *v.* Anthony, 91 Pa. Superior Ct. 518.

In the instant case the district attorney attacked Sorgi's credibility because his counsel had put his reputation or character in evidence by asking him in chief whether he had ever been arrested before.

*6. Should an indictment be quashed because it fails to name definitely the owner of the property alleged to be stolen?*

In 17 Ruling Case Law, § 66, page 62, we find the following: "It may be laid in the indictment that the goods belonged to a person unknown, if that is actually the case; yet, if the owner be really known, the allegation will be improper, and the prisoners must be discharged from the indictment:" State *v.* Ryan, 4 McCord L. (S. C.) 16; 17 Am. Dec., 702.

In section 65 thereof, it also says that it is not essential that the thief should know who the owner is. It is sufficient if he knows that the property is not his own and takes it to deprive the true owner of it: 88 Am. St. Reps., 64, note.

Also, in 25 Cyc., 93, see the following: "But ownership may, if such is the case, be laid in a person unknown. Where ownership is averred as unknown but possession was in 'A,' the indictment was held sufficient. The indictment fails, however, if it is proved that the owner was in fact known, since there is a variance; and this is true even though the grand jury was in fact ignorant of the ownership, if by reasonable diligence they might have discovered the owner. . . . It is not necessary to aver that the unknown person is not the defendant."

Com. *v.* O'Brien, 2 Brewster, 566: "This was indictment for stealing the property of 'X.' The witness could not say that the property belonged to 'X.' Motion to amend by inserting 'of some person unknown.' This was argued under secton 13, Act of March 31, 1860, and no continuance granted (*i e.,* no prejudice or surprise)."

25 Cyc., 125: "Where the owner is alleged in the indictment as unknown, there can be no conviction unless it is proved that the grand jury did not know his name, and could not discover it by diligence. . . . In the case of unknown ownership alleged, it is necessary to prove that the defendant is not the owner."

Sharp *v.* State, 29 Texas Appeals, 211; 15 S. W. Repr. 176 (1890): "If an indictment for larceny avers ownership of property is unknown, it must be shown that the grand jury did not know the owner and used reasonable diligence to find out, otherwise the conviction cannot be sustained."

People *v.* Kellogg, 94 N. Y. Supp. 617: "The indictment read: 'With intent to deprive and defraud the said F. J. W.' and said divers other unknown persons of the same.

"Under the Code of Criminal Procedure, section 281 provided that an erroneous allegation of an indictment as to the person injured is immaterial, evidence of larceny of money from an unnamed person is sufficient to support an indictment charging the larceny of the money from a certain individual and divers other persons to the grand jury unknown, although there is no evidence of a larceny from the individual named." See State *v.* Logan et al., 119 Maine, 146 (109 Atl. Repr. 593), Judge Morrill.

"It is a familiar principle that in indictments for larceny, the ownership of the stolen articles must be stated, and must be proved as laid; it is equally familiar that ignorance by the grand jury of the name of the person having either general ownership of the stolen property or special interest therein, does not shelter the criminal, and ownership may be laid in persons to the grand jury unknown."

**366**

Wharton—Forms—Page 20: 2 Hawk, ch. 25, § 71; 2 East P. C. 651, 781; Cro. C. C. 36; Plowd., 85 B; Dyer, 97, 286; 2 Hale, 181; Com. *v.* Tompson, 2 Cush. 551; Com. *v.* Hill, 11 Cush. 137; Com. *v.* Stoddard, 9 Allen, 280; Goodrich *v.* People, 3 Parker C. R. 622; Com. *v.* Sherman, 13 Allen, 248.

Wharton—Criminal Law: Section 1173. "The property of stolen goods must be averred to be in the right owner, general or special, if known, or in some person or persons unknown."

Section 1188. "If the owner be unknown, the goods may be laid as, 'the goods of a person to the jurors unknown,' for otherwise it would be impossible for felonies of this class to be punished. So, if in an indictment for 'receiving stolen goods,' the principal felon be unknown, it may be described in like manner."

McVey *v.* State, 23 Texas Appeals, 659; 5 S. W. Repr. 174 (1887), President Judge White: "It has been held repeatedly by this court that an indictment for theft of animals (two horses) is valid when the allegation is that the owner is a person whose name is to this grand jury unknown."

Section 1220. "Ownership must be distinctly averred, either in a specific person or a person unknown to the grand jury. . . . The goods may be averred to be of a person unknown, and this sufficiently negatives ownership in the defendant:" State *v.* Hanks, 39 La. Ann. 234; 1 So. Repr. 458; Maddox *v.* State, 14 Texas Appeals, 447.

Therefore, we make the following formal

. *Order.*

And now, Oct. 16, 1929, the above matter coming on to be heard by the court *in banc* on motions for new trials, the court doth order and decree that the motions for new trials in the above cases be and are hereby dismissed *sec. rec. et sec. leg.*

From William R. Toal, Media, Pa.