## PEOPLE v. GAYLORD.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1910.)

LARCENY (§ 5*)—PROPERTY SUBJECT OF LARCENY—PUBLIC PROPERTY—TIMBER.

The Constitution provides that the forest preserve and the lands of the state constituting the forest preserve shall be forever occupied as wild forest lands, and article 7, § 7, provides that they shall not be leased. sold, exchanged, or taken by any corporation, nor shall timber be sold. removed, or destroyed. Accused, employed by the state to patrol and protect its forest reservation, entered into an understanding with a lumberman, by which the latter was to cut down trees on the forest preserve. and accused sold the trees to other persons, and he and an accomplice received from the sale of the timber $7,750. *Held*, that the state timber was a subject of larceny, although the Constitution provides that it shall not be sold, and the same constitutional provision does not deprive the timber of value, and therefore accused was properly convicted of grand larceny.

[Ed. Note.—For other cases, see Larceny, Dec. Dig. § 5.*]

Appeal from Trial Term, Herkimer County.

Harvey N. Gaylord was convicted of grand larceny, and appeals. Affirmed.

The defendant and one Charles A. Klock were indicted by the grand jury of Herkimer county at a Trial Term of the Supreme Court held in and for said county in December, 1907, for the crime of grand larceny, first degree, in that they, as alleged in said indictment, at the town of Wilmurt, in the county of Herkimer, in or about the month of May, 1905, with force and arms, then and there wrongfully, unlawfully, and feloniously did obtain, appropriate, steal, take, and carry away from the possession of the state of New York and the people of the state of New York, the true owners thereof, 50,000 spruce logs of the value of $20,000, with the felonious intent on the part of the defendant and of Charles A. Klock then and there wrongfully, unlawfully, and feloniously to deprive the said people of the state of New York, the true owners thereof, of the said property and of the use and benefit thereof, and to appropriate the same to their own benefit and use, and to steal the same, the said logs being then and theretofore growing trees belonging to the state of New York and to the people thereof, and a part of the realty and lands belonging to the said state, and then and there situate, and theretofore wrongfully and feloniously cut and severed from said real estate, then and there situate in the town of Wilmurt aforesaid, and with the felonious intent upon their part after severing the same to take, steal, and carry the same a,.-ay from the said land and to appropriate the same to their own use and benefit, to the great damage of the state of New York and of the people thereof, contrary to the form of the statute in such case made and provided.

In the second count of the indictment is practically reiterated the charges set forth in the first count, and it is alleged, in substance, that such wrongful and felonious acts were committed by the defendants through their agents, servants, and employés, an with the same intent and purpose on the part of the said defendants as in the first count alleged.

---

The indictment so found was duly sent to the Herkimer County Court for trial at a Trial Term of such court, and on the 1st day of February, 1908, the defendant, Harvey N. Gaylord, was placed upon trial upon the charges alleged in the indictment aforesaid, and as a result of such trial the defendant Gaylord was found guilty, as charged in the indictment, and thereupon he was sentenced to be confined at hard labor in the state prison at Auburn, N. Y., for a term of not less than one year and not more than three years and six months.

The validity of the verdict of guilty and the judgment of conviction entered thereon is challenged upon the grounds: (1) That trees standing on lands within the forest preserve, such lands belonging to the state, are not property within the meaning of the statute defining grand larceny, and that crime cannot be predicated upon the cutting and taking of such trees and logs therefrom. (2) That the logs which were the subject of the alleged larceny were not of the value of $500 or more. (3) That the evidence received was incompetent to establish the value of the logs which, as alleged, by the organic law of the land, are not merchantable and could not be sold in the market. (4) That the evidence in this case only establishes the commission of a misdemeanor by the defendant, and that his conviction as for the crime of grand larceny was unwarranted. It is also urged that the verdict against the appellant rests upon the uncorroborated testimony of accomplices and, therefore, cannot stand. Other questions are raised relating to certain statements made by the district attorney in summing up to the jury and the court's refusal to charge as requested by the defendant's counsel in respect to the force of the proof of good character of the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

H. M. Wilbur (H. A. De Coster, and A. M. Mills, of counsel), for appellant.

Rush F. Lewis, Dist. Atty., for the People.

McLENNAN, P. J. The evidence establishes beyond doubt that the defendant and one Charles A. Klock were in the employ of the Forest, Fish, and Game Commission of the State of New York during all the time mentioned in the indictment and were thus engaged to watch, patrol, and protect a portion of the forest preserve of the state of New York located in the town of Wilmurt, county of Herkimer. The charge is, in substance, that the defendant, acting in consort with Charles A. Klock, cut or caused to be cut 50,000 spruce logs, of the value of $20,000, on such lands and belonging to the state, and being a part of its forest preserve. The evidence tends to show that in the fall of 1904 the defendant had a conversation with one George Vincent, a jobber and lumberman, in reference to cutting some timber upon the forest preserve in said town of Wilmurt, and that, in pursuance of the arrangement made with the defendant, Vincent cut in the fall of 1904 about 500 logs on said premises. The evidence tends to show that the defendant represented to Vincent that the state of New York was entering upon a plan of cutting all the timber, exceeding 10 inches in diameter, on the tract in question, and that he (the defendant) wanted Vincent to do such cutting, and the defendant stated to Vincent according to the evidence that the timber so cut was to be sold to other parties, and that the other parties so buying the timber cut would pay him (Vincent) for the cutting. In pursuance of such talk or agreement, or represen-

tations made by the defendant, Vincent commenced cutting such timber in May, 1905, and continued up to the 2d of August, 1905, and employed for such purpose 12 to 18 men, until he was stopped by the officials of the Forest, Fish, and Game Commission, and at the time Vincent was stopped by such action of the said authorities he had cut down 50,000 13-foot logs, which were the equivalent of about 5,000 cords of pulpwood, and had drawn and put in the skid 26,000 logs, or a little more than half of the cutting. After the defendant had made arrangements with Vincent to cut the said timber, he went to Forrestport and there saw James Gallagher, a lumberman having a sawmill, and also Albert Harrig, a member of the firm of Syphert & Harrig, who were also owners of a sawmill located at Forrestport, N. Y., and the defendant falsely stated to them that the state of New York was to make an experiment in forestry and had determined to cut the timber down to 10 inches on the stump and see what effect it would have on the small timber; that they would sell it at $1.50 a cord, and after some negotiations the defendant made a contract with Gallagher to take about 3,000 cords, and with Harrig to take about 2,500 cords. At the time the arrangements were made with Gallagher and Harrig to take the logs which had been cut upon said land, he stated that it would be necessary for them to pay a small judgment and to consent to a complaint made by him as one of the inspectors of the Forest, Fish, and Game Commission practically in order that the state department should not be thus apprised of the actual conditions which were going on and being consummated under the direction of the defendant. And such complaints and arrests thereunder having been made, and all the parties having been fined practically under the direction of the defendant, the unlawful and wicked scheme devised by the defendant to procure to be cut and to be sold the trees and logs belonging to the state was carried into effect and consummated.

The evidence tends to show that the timber was cut by the defendant's agent and employè, James Vincent; that the defendant profited and benefited by the transaction together with his accomplice, Klock, the other defendant, by receiving $7,750 in cash; that the timber belonged to the state of New York; that the defendant had no right to cut, sell, or remove the same, or procure the same to be cut or removed.

The facts, in plain English, are that the defendant and Klock, who were employed by the state to patrol and protect its forest preserve and see that its timber was not wasted or despoiled, entered into an understanding, contract, or arrangement, no matter which, by which they permitted Vincent to cut down the trees in question; that they then made arrangements with James Gallagher and Harrig by which such persons should receive the trees and timber so cut at a certain price, they agreeing to pay Vincent for the cost of the cutting. Under the directions of the defendant, such timber over which he was in charge as agent or custodian of the state was permitted to be cut by Vincent, was by him sold to Gallagher and Harrig, they agreeing to pay Vincent for the cost of cutting, and as a result there was paid over to the defendant and Klock the sum of $7,750, Harrig paying

$4,000, and Gallagher paying $3,750, and they gave receipts therefor, which money the proofs show was never turned over to the state department, but was kept and retained by the defendant and his codefendant, Klock.

Upon the facts as thus stated, and practically proven without contradiction, it would seem that the defendant was guilty of larceny in the first degree, provided the value of the timber or logs thus sold by him exceeded the sum of $500. If this was a charge against a defendant, the complainant being one of the citizens of the state, it would hardly seem possible that under the facts here presented such defendant would not be guilty of the crime of larceny. In the case at bar the defendant was placed in charge and made the custodian of the property in question. He assumed unlawfully and without any authority to give another the right to cut down such timber, and then assumed to sell to another party or parties such timber so cut; the defendant himself receiving the value of such lumber.

It seems to us that, in the ordinary sense, such action on the part of the defendant would amount to larceny in the first degree, provided the value of the timber thus sold by him was of sufficient amount. But it is urged in substance, that the trees, timber, and logs upon the forest preserve of the state are not property within the meaning of the larceny statute. This is urged because of the provisions of the amended Constitution which provides that the forest preserve and lands of the state now or hereafter acquired, constituting the forest preserve, as now fixed by law, shall be forever occupied as wild forest lands. They shall not be leased, sold, exchanged, or be taken by any corporation, public or private; nor shall the timber thereon be sold, removed, or destroyed. Section 7, art. 7, Const. N. Y.

It seems clear that by such constitutional provision it was not intended that the state might be despoiled of its property any more than any other citizen, and that the larceny statute protects it (the state) as to its lands the same as any of its citizens. The state of New York has spent millions of dollars to acquire its forest preserve. It was purchased from private individuals, and when title vested in the state it had commercial value and all the attributes of property. It is inconceivable that the constitutional amendment or provision prohibiting the sale of such land has divested it of its property attribute.

The same suggestion applies to the point urged by appellant's counsel that the property taken was without value, because it had been deprived of its value by reason of the fact that the Legislature had prevented its sale in the market. It had an intrinsic value. Such intrinsic value was in the state, and it is idle to say, as it seems to me, that it had no value because by act of the Legislature of the state it was provided that it could not be sold in the market.

It would seem unnecessary to go further into a discussion of the facts in this case or of the law applicable thereto. The defendant, as clearly established by the evidence, while engaged to protect the forest preserve of the state, entered upon a scheme by which another should cut a large number of trees upon such preserve, and with still another that he should purchase such trees illegally cut or illegally au-

thorized to be cut by the defendant, and that as a result of such contract of purchase the defendant received between $3,000 and $4,000 for his agreement to permit the cutting and the delivery of the trees or logs to the third parties, which he was charged with the duty of protecting. In other words, the defendant assumed to sell the property of the state, assumed to procure it to be put in proper and suitable condition for sale and delivery. It was so cut; it was so put under his direction into suitable condition for delivery; it was delivered, and there was paid as the result of such transaction $7,750 to the defendant and his associate, Charles A. Klock.

It seems to me that these facts were amply supported and corroborated by the evidence of the witnesses John Bellinger, Anthony Coleman, Napoleon Biron, Arthur Lavoy, and Daniel Patterson. While Vincent, Gallagher, and Harrig may possibly be regarded as accomplices, the witnesses just referred to cannot be so classified.

It seems to me that the other question raised, that the district attorney made improper remarks in his address to the jury, was properly taken care of by the remarks and charge of the court.

It is further concluded that there was no reversible error committed by the court in refusing to charge as requested by the defendant's counsel.

I conclude that the judgment entered upon the verdict of the jury of guilty should be affirmed.

Judgment affirmed. All concur.