## SUPREME COURT.

Thomas T. Ellis, plaintiff in error agt. The People, defendants in error.

When different instruments are properly *in evidence* for other purposes, the *hand-writing* of such instruments may be compared by the *jury*, and the genuineness or simulation of the handwriting in question be inferred by such comparison. A *witness* cannot, however, take the place and usurp the functions of the jury.

When the facts may or may not constitute *larceny*, depending upon the intent of the prisoner, this felonious intent is a question which can only be found by the *jury*.

An *exception to a charge* of the court should point to the very error complained of, that, if committed inadvertently, it may be corrected.

*New York General Term, March,* 1861.

Clerke, Sutherland and Allen, *Justices.*

Writ of error, bringing up for review a judgment of the general sessions.

> Henry L. Clinton and James R. Whiting, *for plaintiff in error.*
>
> John Sedgwick, *for defendants in error.*

By the court, Allen, Justice. There was no error in allowing the questions to be propounded to the prosecutrix and principal witness, which were objected to by the prisoner. Upon cross-examination by the prisoner's counsel, she had testified to intimate social and professional relations between herself and the prisoner, and that the latter had borrowed money from her, from time to time, on several occasions; and a receipt, purporting to be signed by the witness, had been produced by the prisoner, in which the loans were mentioned, and the ring alleged to be stolen was said to have been lent to the prisoner to raise money on. The witness had also testified on the cross-examination to a former complaint before a magistrate for the same larceny, which she had discontinued and caused to be dismissed. It was proposed for the prosecution to show the

particulars of the transactions thus generally brought out on cross-examination, that the jury might better judge of their bearing upon the main issue. Knowing the circumstances and amounts of the loans, and the securities given for their re-payment, they could give proper weight to the arguments legitimately based upon these dealings, for and against the claims, on the one side, that the taking of the ring was felonious, and upon the other, that it was with the consent of the prosecutrix, and to be pledged for money. If evidence of the dealings between the parties was competent on the part of the prisoner, every circumstance tending to show the nature and character of these dealings was competent as a part of the transaction and explanatory of them. Again, the dismissal of the first complaint, unexplained, tended to prejudice the prosecution and discredit the witness. The explanation that the prisoner was indebted to her in a large amount, which he promised to pay and to return the ring if the complaint was dismissed, was proper to be submitted to the jury, and they were judges of the effect to be given to the circumstances as well as the explanation. The facts called out by the questions were not collateral to the main issue. They were intimately connected with, and tended to qualify and give character to, the principal circumstances and acts relied upon, as well in the prosecution as the defence of the indictment.

The offer on behalf of the prisoner, to prove by the witness Clarke that, in his opinion, the signature to the receipt before spoken of, and the signature of the complainant, admitted to be genuine, to two affidavits produced, were written by one and the same person, was properly rejected.

I. Clarke was in no sense an expert. He had no greater facilities or opportunities for acquiring a knowledge of handwriting, or becoming skilful in detecting forgeries, or discovering resemblances, than are enjoyed by those engaged in any commercial business.

II. The affidavits were not papers in the case. They

were not put in evidence or used for any purpose. Whether they would have been competent as evidence in the cause would have been decided had they been offered. Whether the affidavits related at all to the transaction under investigation, does not certainly appear; but if they did, it does not necessarily follow that they were evidence in the cause. They were only sought to be used by way of comparison of handwritings, which is never admissible.

III. If they were properly before the jury, and Clarke be conceded to be eminently expert in determining upon the genuineness of signatures by inspection or comparison, the testimony offered was not allowable. It was an attempt to prove by comparison of hands; that is, by the juxtaposition of the two writings, that the three papers were written by the same person, and that, therefore, the signature to the receipt, the execution of which had been denied by the prosecutrix, was genuine. It is well settled that evidence of this character is inadmissible. (*People* agt. *Spooner*, 1 *Duer*, 343; *Jackson* agt. *Philips*, 9 *Cow.*, 94; *Wilson* agt. *Hubbard*, 5 *Hill*, 182.) The rule in this state and in England is, that when different instruments are properly in evidence for other purposes, the handwriting of such instruments may be compared by the jury, and the genuineness or simulation of the handwriting in question be inferred by such comparison. (*Van Wyck* agt. *McIntosh*, 4 *Bev.*, 442; *Dor* agt. *Mutine*, 5 *A. & E.*, 514.) A witness cannot, however, take the place and usurp the functions of the jury.

The only other questions arose upon the charge of the recorder, and his refusals to charge as requested. He was requested, in effect, to take the case from the jury and decide, as matter of law, that the taking of the ring under the circumstances, testified to by the witness Roberts, did not constitute larceny. It is true that he acquired a temporary charge or manual custody of the property with the assent of the owner, but for a special purpose, if the testimony of Miss Roberts is credited; and the owner never

parted with the legal possession. Upon the testimony of the prosecutrix, the possession of the property was not obtained by the prisoner as barter, or purchased. Such a possession, obtained by fraud and crime, would stand upon different ground. But he took the ring to look at, and subsequently detained it against the owner's consent, and converted it to his own use. It is evident that if the conversion was felonious, it constituted the crime of larceny. It would not be essential that the felonious intent should exist when he received the ring. It would be enough if he committed it *animus furandi.* (*People* agt. *Coll,* 1 *Duer,* 120.) The request made was based upon the taking and conversion, as declared by Miss Roberts; and whether the conversion was a felony depended solely on the intent; and as the jury might find the larcenious intent, the judge properly declined to decide as matter of law that larceny could not be predicated upon the facts. The felonious intent was a question for the jury, not for the court. The facts might or might not constitute larceny, depending upon the intent of the prisoner, which could only be found by the jury.

The question of intent, as a question of fact, was properly submitted to the jury, with proper instructions, in accordance with *People* agt. *Coll, supra,* except that it was too favorable to the prisoner, in this, that the recorder charged them that the felonious intent must have existed at the time of the taking of the ring, while it would have been sufficient if such intent had existed at the time of the conversion.

The prisoner's counsel complain that the recorder instructed the jury as to the testimony of the witness Roberts in determining the purposes for which she suffered the prisoner to take the ring. I do not so understand the charge. The whole charge is not given, and the clause complained of is in reference to the request made by the counsel, to hold as matter of law that upon her evidence there was no offence proved; and as a qualification of the refusal so to hold, the recorder, in effect, said to the jury, when refusing to decide

as requested, that it was for them to pass upon the credit to be given to Miss Roberts, and the effect to be given to her testimony. But if it is otherwise, the attention of the recorder was not called to the statement now complained of, when he might have corrected any inadvertent omission to allude to the other testimony tending to impeach or contradict the witness, or to vary the circumstances; and the exception being to the whole paragraph, the general import of which is strictly accurate, or at least not inaccurate to the prejudice of the prisoner, it is too broad and must be corrected. The exception should point to the very error complained of, that if committed inadvertently, it may be corrected. The jury have found that the property stolen was usually known and described by the names used in the indictment. This rendered the indictment certain to a common intent, and the description was sufficient. It does not appear that any species of property known as a "ring" is valueless, or not the subject of larceny, like the "adder's eggs" or "wild game."

The judgment must be affirmed.