# COURT OF GEN. SESSIONS—NEW YORK COUNTY,

## Oct., 1912

## THE PEOPLE v. NICHOLAS ARNSTEIN.

### (78 Misc. 18.)

(1.) LARCENY*—PENAL LAW, § 1209—DEFINITION.

Section 1290 of the Penal Law defining the crime of larceny is to be interpreted not only in the light of the rule and reason of the common law, but also in the light of the statutes in force at the time of the enactment of said section.

(2.) SAME—AT COMMON LAW OBTAINING MONEY BY FALSE REPRESENTATION.

At common law the obtainment of money by false representation or pretense where not obtained by means of a false token was not a crime.

(3.) DEMURRER MAY BE LIMITED TO PARTICULAR COUNT.

A demurrer may be limited to a particular count in an indictment containing several counts.

(4.) SAME.

Where the first count of an indictment under section 1290 of the Penal Law charged the defendant and others with the crime of larceny in obtaining money from complainant in the State of Connecticut by false representation or pretense, and no false token was used, and there is no allegation that the common law did not prevail in Connecticut at the time defendant obtained the money as charged, it must be presumed that no criminal act was committed in the State of Connecticut, and that, therefore, said representation or pretense made in this State was no part of the crime; and a demurrer to said count on the ground that the facts stated do not constitute a crime will be sustained.

DEMURRER to indictment.

*O'Gorman, Battle & Marshall (George Gordon Battle,* of counsel, *Raymond H. Sarfaty* with him on the brief), for demurrer.

---

* See Notes 1-355, 12-324, 23-459, 25-9, 25-73.

*Charles S. Whitman,* District Attorney (*Robert S. Johnstone* and *James A. Delehanty,* Assistant District Attorneys, of counsel), for People.

CRAIN, J.:

The indictment contains two counts, the first charging the defendant with the crime of larceny by means of false representation or pretense, the second charging him with larceny in the common law form.

The original demurrer as filed was to the entire indictment. On the oral argument the learned assistant district attorney called the attention of counsel for the demurrant to the presence of this second count. The latter then asked permission to file an amended demurrer limited to the first count, and the assistant district attorney not objecting such consent was granted. Thereafter the present amended demurrer going alone to the first count in the indictment was filed.

Although an indictment is in the criminal law what a complaint is in the civil law, and a comparison of what an indictment is required to contain with what a complaint is required to contain shows that the language of the Criminal and Civil Codes of Procedure in these regards is almost identical, the Code of Criminal Procedure contains no provision analogous to that in section 492 of the Code of Civil Procedure, which permits a defendant to demur to one or more separate causes of action, for there is no section of the Code of Criminal Procedure either permitting or forbidding in express terms the filing of a demurrer limited to a separate count in an indictment.

Section 323 of the Code of Criminal Procedure provides that a demurrer may be filed to an indictment where " the facts stated do not constitute a crime; " section 275 that an indictment must contain " A plain and concise statement of the act constituting the crime, without unnecessary repetition," and section 279 that " The crime may be charged in separate counts

to have been committed in a different manner, or by different means."

In the case at bar it is the right so given which has been exercised.

In certain criminal actions it has been held that a demurrer interposed to a whole indictment containing more than one count is bad, if any count is good, while in other such actions demurrers to single counts have been held ineffective where effective prosecution could be had under counts not demurred to. People v. Rice, 35 N. Y. St. Rep. 185; People v. Willett, 102 N. Y. 251. In both classes of cases it may be said that the regularity and the permissibility of the interposition of a demurrer limited to a particular count in an indictment were assumed.

No objection has been taken on the score that the statute in terms makes no provision for a demurrer limited to a particular count as distinguished from one to an entire indictment or from one to each count in an indictment separately considered, and the course adopted in the case at bar in filing a demurrer limited to a single count in the indictment being in conformity to a more or less well established mode of procedure, and having been made the law of this case so far as consent can make it so, such course is treated as proper and the amended demurrer as sufficient to warrant consideration and decision by the court of the validity of the count in the indictment which it assails.

This first count so demurred to charges the demurrant in conjunction with others with the statutory crime of larceny by means of false representation or pretense.

The indictment in such first count alleges that the defendant and others, all late of the county of New York, on August 19, 1911, feloniously entered into a conspiracy for the purpose of fraudulently dealing in the stock of a certain corporation and of cheating and defrauding persons to whom they should sell shares of its stock, and to obtain money from such persons by

false pretenses and so deprive and defraud them of their property by obtaining it without consideration. It charges that at the time named they feloniously conspired by false pretenses to cheat and defraud William B. Shinks of property mentioned in the indictment and to appropriate the same to their own use, and that in pursuance and furtherance of such conspiracy they feloniously deliberated in the county of New York upon the defrauding of Shinks and planned and arranged the commission of such fraud in a manner and by means to the grand jury unknown. It then charges that afterwards in further pursuance and furtherance of the conspiracy they went from New York county to the city of Springfield, Mass., and there with like intent falsely pretended and represented to Shinks that a corporation called Chelan Consolidated Copper Company, having a capital stock of 1,200,000 shares of the par value of $10 each, owned certain mining lands in the state of Washington, and that such lands were of great value and exceeded in value the amount of such corporations capital stock. It charges that they further falsely pretended that three of the defendants other than the demurrant were desirous of purchasing all of the then outstanding stock of such corporation and had theretofore bought and were then buying large amounts of the same, and had theretofore paid and were paying large sums of money in the purchase of the same, and that certain certificates of the capital stock of the said corporation then held and owned by one of the defendants other than the demurrant were well worth the sum of $6 each, and that such defendant had paid $6 in money for each of such shares so held by him, and that the demurrant and another defendant had ascertained by whom such shares were owned. The indictment further charges that certain of the defendants other than the demurrant in furtherance of such conspiracy and acting upon such deliberation between the 15th day of August and the 19th day of August, 1911, in the county of New York wrote and delivered for transmission to Shinks

divers telegrams and letters to be received by Shinks at Spring-field, Mass., in which. letters it was falsely pretended that cer-tain of the defendants other than the demurrant were desirous of purchasing the shares so said to be owned by such other de-fendant and to pay for the same, and would pay to Shinks $9 per share in cash upon the receipt of said certificates of stock. It then charges that Shinks, believing such false and fraudulent pretenses and representations and being deceived thereby, was induced to deliver and did deliver at the city of Bridgeport, in the State of Connecticut, to certain of the defendants, includ-ing the demurrant, the sum of $15,000, lawful money of the United States, property of said Shinks. It then charges that such defendants, including the demurrant, feloniously and fraudulently received and obtained such moneys by color and aid of such false and fraudulent pretenses and representations and appropriated such moneys to their own use. The indict-ment then negatives the truth of such various representations and alleges that they were in all respects utterly false and un-true, and that this was known to the defendants at the time of making them, and that by such means the defendants feloniously stole the moneys of Shinks, and that such larceny was committed in part in the county of New York, in part in the city of Spring-field, Mass., and in part in the city of Bridgeport, Conn., and that some of the acts constituting such offense occurred in the county of New York, others in the city of Bridgeport, Conn., and others in the city of Springfield, Mass., against the form of the statute in such case made and provided and against the peace of the People of the State of New York and their dignity.

The demurrant alleges as grounds of demurrer that it ap-pears upon the face of such first count of the indictment that the grand jury by which it was found had no legal authority to inquire into the crime charged by reason of its not being within the local jurisdiction of the county of New York in that it ap-pears upon the face of the said count that the crime charged

was committed in the State of Connecticut; that such first count does not conform substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure; that it appears upon the face of such count that the crime therein charged does not constitute a crime in the State of New York because it appears that such crime was committed in the State of Connecticut; that it appears on the face of such count that it contains matter which, if true, would constitute a legal bar to the prosecution of such crime in that such count contains an allegation that the crime charged therein was committed in the State of Connecticut; that more than one crime is charged in the indictment within the meaning of sections 278 and 279 of the Code of Criminal Procedure and that the indictment does not conform substantially to the requirements of sections 275 and 276 of such Code.

The demurrer urged, however, upon the court but one of such alleged grounds of demurrer, namely, that challenging the sufficiency of the statements in the count assailed to allege the commission under the law of this State of the crime of larceny by false representation or pretense.

The weight of authority in this State is that, where the crime of larceny by false representation or pretense has been committed, the pretense is to be regarded as a substantive part of the crime and not merely as the means by which the crime was committed, and the question for decision is (a) whether section 1290 of the Penal Law, without regard to other statutory enactments, embraces a case like the one at bar, where the obtainment of property resulting from the false representation or pretense was had *without* the State, and (b) whether if not broad enough to cover such a case apart from other statutory enactment the words "*within the state*" and "*in whole or in part*," found in subdivision 1 of section 1930 of the Penal Law, should in effect be read *into* section 1290, and given the force and effect which they would have if found in such section, and

if such section should therefore be construed as though reading: " A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person   *   *   *   obtains from such possession by color or aid of fraudulent or false representation or pretense, or if any false token or writing *within the State in whole or in part*   *   *   * any money or personal property   *   *   *   steals such property, and is guilty of larceny." In other words, is such language in subdivision 1 of section 1930 to be construed as though it formed part of the definition of the crime of larceny as contained in section 1290 of the Penal Law, with the consequence that such definition so including such words makes criminal as a larceny a false representation or pretense within the State where the resultant obtainment, as in the case at bar, was in *another State?*

Each of these branches of the question for decision must be answered in the negative for reasons to be stated and the demurrer as a consequence allowed.

Section 1290 of the Penal Law, in common with all other provisions of that law, is to be interpreted in the light of the rule that reason of the common law as well as in the light of the statutes in force at the time of its enactment.

Broadly stated, the rule at common law was that concurrent jurisdiction exists in the place of the starting of the offense and in the place of its consummation, provided that the offense was indictable in the place of consummation. Under this rule the thing done in New York State to be indictable must at least have been part of a crime, that is to say, part of something indictable at the place of consummation. Apart from statutory provision to the contrary where that done outside of the jurisdiction is not criminal where done—that is to say at the place where done—that done in New York is not part of a crime.

Obtainment of money by false representation or pretense,

where not obtained by means of a false token, was not criminal at common law and therefore not indictable, and such was the obtainment alleged in the first count of the indictment. There are no allegations in the indictment to show, if such be the fact, that the common law did not prevail in Connecticut at the time of the obtainment of the money. The use of the word " feloniously " to characterize the obtainment of the money in Connecticut expresses the mere conclusion of the pleader, and purports in this connection that the obtainment was with criminal intent. People v. Hartwell, 166 N. Y. 361, 366, 15 N. Y. Crim. 377. It is not an allegation of fact equivalent to a pleading that the acts as set forth in the first count of the indictment were criminal either under the common law as interpreted by the courts of Connecticut or the equivalent to a setting forth in the indictment of some provision of the Connecticut statute, if such there be, making such acts criminal, and the presumption in the absence of any such allegation is that the common law prevailed in Connecticut. Therefore the obtainment of the money must be presumed not to have been criminal in Connecticut, and if not criminal in Connecticut the representation or pretense in New York was not part of a crime.

In the light of the circumstance that the obtainment in Connecticut is to be presumed to be lawful for the reasons heretofore stated, the fact that the indictment contains allegations of a conspiracy in New York county is immaterial, for, as is said by the Supreme Court of the United States in the case of American Banana Co. v. United Fruit Co., 213 U. S. 347, " a conspiracy in this country to do acts in another jurisdiction does not draw to itself those acts and make them unlawful if they are permitted by the local law."

As has been stated, obtainment of money by false representation or pretense in a case like the one at bar, where no false token was used, was not a crime at common law. It was not larceny under the Revised Statutes, and only became so under

the provisions to that effect in the Penal Code now re-enacted in the Penal Law. It is therefore a statutory crime. With respect to all statutory as distinguished from common law crimes the acts forbidden and punishable under our Penal Law must be construed as being forbidden to be done within the State, and to be only punishable where so done, except in those cases where the statute in terms enacts that they are criminal if done wholly or partly out of the State. Such construction is required in part by the application of the rule that all legislation is *prima facie* territorial (Charles v. People, 1 N. Y. 180, 184; People v. Merrill, 2 Park. Cr. Rep. 590, 596; Ormes v. Dauchy, 82 N. Y. 443, 448; American Banana Co. v. United Fruit Co., 213 U. S. 347, 357), and in part by the application of the maxim, *expressio unius est exclusio alterius.* This maxim is applicable because (a) in the article in the Penal Law in which the crime of larceny is defined an instance is mentioned in which that crime is committable where the acts constituting it are done without the State (see Penal Law, § 1301), and (b) because the Penal Law respecting several other crimes in terms makes them committable, although done in whole or in part without the State. Among such are certain offenses under articles 16, 54, 68, 72, 94, 130 and 188 of that law.

Section 1290 of the Penal Law, considered therefore apart from other statutory enactment in the light of the rule and reason of the common law and in the light of the principle of the *prima facie* territorial character of legislation and in the light of the application of the maxim alluded to, is limited to those cases in which the acts therein forbidden are done within the State.

The language found in subdivision 1 of section 1930 of the Penal Law heretofore alluded to cannot for the following reasons be read into section 1290 of that law, which defines the crime of larceny.

The place in the statute in which section 1930 of the Penal

Law is found, coupled with the title of the article in which it is found, presents the first reason why it should not in effect be read into section 1290 of that law or into any other part of the statute purporting to *define a crime.*

The Penal Law has three distinct objects, namely, first to specify the classes of persons capable of committing crime and liable to punishment therefor; secondly, to define the nature of the various crimes, and thirdly, to prescribe the kind and measure of punishment to be inflicted for each. Penal Law, § 20.

Before the adoption of the arbitrary because alphabetical rearrangement of the sections of the Penal Code now known as our Penal Law and under the Penal Code, which it superseded, the provision of which section 1930 of the Penal Law is but a re-enactment, namely, section 16 of the Penal Code, was found in a title entitled " Persons punishable for crimes." Manifestly without intent to change the meaning and merely for the sake of brevity the corresponding article in the Penal Law was entitled " Punishment." Under both the Penal Code and Penal Law the provision in question was therefore not found in any part purporting to define crimes in general or any crime in particular, but on the contrary in an article devoted to a description of the classes of persons punishable for crime.

Section 1930 in its entirety is the correlative of *all* the sections of the Penal Law *taken together* which define crime. Such sections *define* crimes and section 1930 enacts the punishability of those who commit them. Its scope is no broader than the sum total of such crime-defining sections. Each of its subdivisions has some correlative among such crime-defining sections. Thus subdivisions 1 and 3 have their correlative in that portion of section 2 defining what constitutes a principal; subdivision 2 has its correlative in sections 1301 and 1308; subdivision 4 has its correlative in subdivision 3 of section 1250, and subdivision 5 has its correlative in sections 581, 735, 1047, 2096 and similar sections. In no instance is the liability to punish-

ment enacted by any subdivision of section 1930 broader than the provisions of the correlatives of such section.

If subdivision 1 of section 1930 were interpreted in a manner to validate the assailed count in the indictment it would be because construed as broadening the definition of larceny as contained in the Penal Law. Its construction would thus be differentiated from that of necessity given to every other subdivision of the same section, and in a statute originally noteworthy for its orderly arrangement it would present the anomaly of a misplaced provision.

The language of the subdivision itself presents the second reason why it should not in effect be read into section 1290 of the Penal Law or into any other part of the statute purporting to define a crime. It assumes the commission of a crime and declares when punishability shall attach to its commission. The words *in whole or in part* are descriptive of the extent or degree of *participation,* not of the *locality* of commission.

Subdivision 1 of section 1930 of the Penal Law provides that a person shall be punishable who commits any " crime," whether he commits such crime in whole or in part within the State. To be punishable under that subdivision he must answer to the description of one committing a " crime." When recourse is had to the general definition of a crime as contained in the Penal Code, and now in the Penal Law, it is found that the definition is composed of two elements, namely, first, that it shall be an act or omission forbidden by law, and, secondly, that it shall be punishable in some one of specified ways. Penal Code, § 2 ; Penal Law, § 2. Before, therefore, a given act can be pronounced to be a crime it must be established that it is forbidden by law and, moreover, if committed since the Penal Law went into effect, that it is so forbidden by some provision of either the Constitution of the State, the Penal Law itself or of some statute of this State not repealed by the Penal Law. This is not accomplished where the act is done in part in another jurisdic-

tion by merely pointing to a statute silent on the subject of locality, unless the statute be one defining what was at common law a crime and punishable as such, although partly done without the State.

An act or omission forming an element of a crime is not in itself a crime merely because it is such an element when separated from the other elements forming in conjunction with it the crime. It is only a crime, if it is something which standing alone is " forbidden " by our law and " punishable " under our law, either as constituting when committed the crime of an attempt to commit the crime of which it forms an element in a crime or under circumstances perhaps constitute the crime of an attempt to commit a certain crime, but it does not constitute the crime of larceny apart from an obtainment as the result of such false representation or pretense and, moreover, an obtainment under circumstances which are forbidden and punishable and an obtainment outside of the jurisdiction of the State is not forbidden by our law nor punishable by it unless our law is to be given an extraterritorial force.

Because more than one element enters into the crime of larceny by false representation or pretense that crime is particularly susceptible of being committed by a number of persons acting in conjunction, as in the case at bar. All such may participate in its commission without any one committing it wholly, in the sense of personally doing everything connected with its commission, but in that sense committing it only partly; and this first subdivision of section 1930 of the Penal Law provides for the punishability of one who commits such a crime, whether wholly, that is to say without others, or partly, that is to say in conjunction with others. It is a provision in re-enforcement of the statutory provision found in section 2 of the Penal Law that a person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids or abets in its commission, and whether present or

absent, is a principal. This meaning would be entirely plain if the provision read " A person who commits　*　*　*　any crime, in whole or in part." The omitted words, namely, the words " within the State," are merely used in this subdivision contrastively to " without the State," as used in the next following subdivision, and to emphasize the distinction intended to be so made between such subdivisions.

The language of subdivision 1 may therefore be paraphrased as follows: A person is punishable within the State who within the State in whole commits any crime, and a person is also punishable within the State who within the State in part commits. *any crime.* As stated " in whole or in part " relate to the *commission.* They refer to the relation which the person bears to the forbidden and punishable act done—namely, to the crime. Commits in whole means commits in its entirety; commits in part means not in its entirety. The law knows no such thing as a *partial crime.* It does not punish as for partial crimes. It punishes those who commit crimes, that is to say, things forbidden by law. The fact that this is so is emphasized by the provisions of the Penal Law, making under circumstances constituent elements in other crimes the independent crime of an attempt to commit the crime of which they form an element. To repeat, subdivision 1 of section 1930 of the Penal Law presupposes the commission of a " crime." That done must be an act forbidden by and punishable under our law. In whole or in part do not refer to the *locus* of the commission but to the *extent or degree of participation in the commission.*

Section 1933 of the Penal Law contains a general provision that a person who commits an act without this State, which if committed within this State would be a crime, is punishable as if the act were committed within this State, provided that such act affects persons or property within this State, or the public health, morals or decency of this State. Penal Law, § 1933.

12

In the case at bar the act of the defendants outside of the State, to wit, the obtainment of money in Connecticut, is not shown by the indictment to have affected a person within this State, for there is no allegation that the complainant was at any time a resident of this State or within this State, and he was the person affected within the meaning of this section, nor does the indictment show that such act affected property within this State, as the money obtained at the time of obtainment in so far as disclosed was outside of this State, nor does the act of the defendant in the obtainment of money within the State of Connecticut fall within the class of acts affecting the health, morals or decency of this State within the purview of those terms as used in that section.  The section in question is therefore plainly inapplicable to the case at bar, and is only alluded to because it re-enforces the contention by the implication which it contains that criminality under our law does not attach to even the class of acts therein mentioned unless committed within this State.

Apart from the effect to be given to the statutory provisions in our State heretofore alluded to, the question presented for decision in each of the following cases, namely Stewart v. Jessup, 50 Ind. 413; State v. Schaefer, 89 Mo. 271; Connor v. State, 29 Fla. 455, and Bates v. State, 124 Wis. 612, was the same as that in the case at bar.  In each the crime charged was larceny by false representation or pretense.  In each the false representation was made in one state and the property obtained by means of it in another.  In each the prosecution was initiated in the State where the pretense was made.  In each the jurisdiction of such State was challenged upon the ground that the obtainment was in another State, and in each the court sustained the contention now made in the case at bar that the crime, if any committed, was cognizable alone in the courts of the State where the obtainment was had.

The decisions in this State cited by the learned assistant dis-

trict attorney in his brief show that where both the pretense and the obtainment are within the State, and the act consequently criminal, the pretense is regarded as a substantive part of the crime, and not merely as the means by which the crime is committed, and that being so regarded the venue for purposes of local jurisdiction may be either in the county where the pretense is made, or in that in which the obtainment is had; while contrariwise in those jurisdictions in which the pretense is regarded as the mere means by which the crime is committed the crime is held to be cognizable alone in the jurisdiction of the obtainment; but neither such decisions within the State nor such decisions in other jurisdictions decide the point of law now involved in the case at bar.

The cases of People v. Summerfield, 48 Misc. Rep. 242, 19 N. Y. Crim. 503, and Botkin v. State, 98 Pac. Repr. 861, have not been overlooked. In the former the indictment and the demurrer presented the question now before the court. The disallowance of the demurrer in that case seems to have proceeded from a misconception by the learned justice of the indictment then before the court in that apparently he mistakenly construed it as one charging the misdemeanor of conspiracy and not the crime of grand larceny by false representation or pretense, and the reasoning in his decision proceeds from such mistaken premise. In the Botkin case the crime involved was a crime known to the common law committable under the common law in part in one jurisdiction and in part in another, and the conclusion there reached by the court was sustainable on this principle apart from the language of the California statute. Such decisions are, therefore, not regarded as authoritative of the question now presented.

Section 327 of the Code of Criminal Procedure provides that if the demurrer be allowed the judgment is final upon the indictment demurred to and is a bar to another prosecution for the same offense, unless the court, being of opinion that the ob-

jection on which the demurrer is allowed may be avoided in a new indictment, direct the case to be resubmitted to the same or another grand jury. Whether the objection taken by the amended demurrer to the first count in the indictment in the case at bar discussed in this opinion can be avoided in a new indictment depends upon whether evidence is procurable which, if submitted to a grand jury, would warrant the finding by such body of a new indictment with allegations appropriate to bring the case within either section 1301 or section 1933 of the Penal Law.

If the district attorney is of opinion that he cannot with propriety proceed to the trial of the demurrant under the common law count in the present indictment, he is given permission, as such evidence may exist, to resubmit the case to the present regular grand jury.

Demurrer sustained.

## NOTE ON LARCENY.

(See, also, Notes on Larceny, v. 1, p. 355; Intent in Larceny, v. 12, p. 324; Larceny by Agent, v. 23, p. 459; Larceny by Check, v. 25, p. 9; Larceny of Timber on State Lands, v. 25, p. 73; False Pretenses, v. 20, p. 290.)

DEFINITIONS.

The felonious taking and carrying away of the personal goods of another. 4 Blackstone Commentaries, 229.

The fraudulent taking and carrying away of a thing without claim of right, with the intention of converting it to a use other than that of the owner. Wharton Criminal Law, 862.

The taking and removing by trespass, of personal property which the trespasser knows to belong either generally or specially to another, with the felonious intent to deprive him of his ownership therein; and, perhaps it should be added, for the sake of some advantage to the trespasser. 2 Bishop's Criminal Law, 758.

See also People v. Nichols, 3 Parker Crim. 579.

One who obtains possession of personal property by trick, fraudulent device or artifice, with the intention of appropriating it to his own use or that of another, is guilty of larceny at common law. People v. Walker, 85 App. Div. 556, 17 N. Y. Crim. 436.

Distinction between larceny and obtaining property under false pretenses lies in the intention with which the owner parts with the property. If his intention is to invest the defendant with the mere physical possession of the property, and the latter with the requisite intent receives it and converts it to his own use, it is larceny. Loomis v. People, 67 N. Y. 322.

## AT COMMON LAW.

Larceny at common law might be either "simple" or "plain" larceny, or "mixed" or "compound" larceny. 4 Blackstone, 229.

Simple larceny defined as the felonious taking and carrying away of the goods of another. 4 Blackstone, 239.

And as larceny unaccompanied with any atrocious circumstances. State v. Chambers, 22 W. Va. 779.

Mixed or compound larceny has the elements of simple larceny, and further, is a taking from the owner's house or person. Anderson v. Winfrey, 85 Ky. 597.

## SAME—WHAT MAY BE THE SUBJECT OF LARCENY.

Ice put away in an ice-house for domestic use. Ward v. People, 6. Hill, 144.

A letter or paper, having no intrinsic value, cannot be the subject of larceny. Payne v. People, 6 Johns. 103.

A satisfaction of mortgage, fraudulently obtained from the agent of the mortgagee, to whom it had been sent to be delivered upon the payment of the debt, held not to be the subject of larceny. People v. Stevens, 38 Hun, 62.

A chose in action being in its essence intangible, held not the subject of larceny at common law, and the paper evidence thereof considered as merged with it. People v. Jackson, 8 Barb. 637.

Public records are made subjects of larceny by statute, and hereunder indictments are held to be public records and therefore subjects of larceny. People v. Mills, 178 N. Y. 274, 18 N. Y. Crim. 269.

An evidence of debt which does not include a written memorandum of an unenforceable agreement, a subject of larceny by statute. People v. Hall, 74 Hun, 96.

· Common receipts not subjects of larceny. People v. Griffin, 38 How. Pr. 475.

An accountable receipt and a note payable in chattels are subjects of larceny. People v. Bradley, 4 Park. Crim. 245.

SAME—HELD TO BE THE SUBJECT OF LARCENY.

Bank-bills engraved but not yet issued, subjects of larceny. People v. Wiley, 3 Hill, 194.

Where one by fraud procures the signing of a receipt by another and then takes it from him, the receipt never having taken effect by delivery, he cannot be indicted for larceny. People v. Loomis, 4 Den. 380.

Under the common law realty and whatever was thereto attached could not be the subject of larceny—so a growing crop held incapable of being the subject thereof. Comfort v. Fulton, 39 Barb. 56.

Oysters and clams planted under public waters in a bed where they do not exist naturally, inclosed by stakes or otherwise to show private possession, held subjects of larceny. People v. Wanzer, 43 Misc. 136.

Dogs and cats not subjects of larceny at common law. People v. Campbell, 4 Park. Crim. 386.

Domestic animals unfit for food made subjects of larceny by statute. Mullaly v. People, 86 N. Y. 365, 1 N. Y. Crim. 351.

When clams and oysters are reclaimed from nature and transplanted to a bed where none grew naturally, and the bed is so marked out by stakes as to show that they are in the possession of a private owner, they are personal property and may become subject of larceny. People v. Morrison, 194 N. Y. 175, 23 N. Y. Crim. 173.

Timber growing on State lands may be the subject of larceny. People v. Gaylord, 139 App. Div. 814, 25 N. Y. Crim. 66 (See also Note on Larceny of Timber on State Lands, vol. 25, this series, page 73, and cases there cited).

The stealing of a written instrument which is an evidence of debt constitutes the same crime as the stealing of money and the sum called for by the written instrument is deemed to be the value of the thing stolen. People v. Geyer, 132 App. Div. 790, 23 N. Y. Crim. 463.

## THE TAKING AND CARRYING AWAY.

Goods in the owner's pocket are sufficiently taken and carried away when completely grasped in the taker's hands and lifted from the bottom of the pocket, although not yet removed from the pocket. Harrison v. People, 50 N. Y. 518.

To jostle another so that a watch and chain drops from his person is not a sufficient taking of the watch to constitute larceny. People v. Rogers, 22 App. Div. 147, 12 N. Y. Crim. 476.

Even though possession is taken there can be no larceny without a carrying away. Harrison v. People, 50 N. Y. 518.

A bare removal from the place where the goods are found is a sufficient taking and carrying away. People v. Cruger, 102 N. Y. 510, 4 N. Y. Crim. 452.

One who merely withholds possession of property which he ought to give up to another, although the withholding be felonious, is not guilty of larceny since there is no taking. Parr v. Loder, 97 App. Div. 218.

Where several articles are bailed simultaneously, and the bailee takes one of them, he is guilty of larceny. Nichols v. People, 17 N. Y. 114.

## SAME—BY CUSTODIAN THEREOF.

Where one hands money to another to be changed on the spot, if the latter takes with felonious intent without returning the right change, he is guilty of larceny. Hildebrandt v. People, 56 N. Y. 394.

Where the holder of a promissory note having received a partial payment from the maker handed it to him to indorse the payment, and he took it away and refused to give it up, it was held that the possession remained in the owner, and that his subsequent conversion being found to be felonious, was larceny. People v. Call, 1 Denio, 120.

## SAME—BY SERVANT OF OWNER.

Cashier in the State treasurer's office by converting instead of depositing a draft committed to his care commits larceny from the State in the constructive possession of which the draft is. Phelps v. People, 72 N. Y. 334.

## SAME—BY PARAMOUR OF OWNER'S WIFE.

Receipt from the wife by an adulterer or one intending to elope with

her and live in adultery with her, of the goods of the husband, held larceny from the husband. People v. Schuyler, 6 Cow. 572.

## SAME—BY OWNER.

If the owner takes goods belonging to himself from a bailee clandestinely with the intention of charging the bailee with the value thereof, he is guilty of larceny. Palmer v. People, 10 Wend. 165.

## OBTAINING OF TITLE—COMMON LAW RULE.

If owner or possessor having actual or apparent authority to deal with the title, intends to pass such title and not merely the possession to the taker, whose intent however in taking them is felonious, such taking is not larceny. Smith v. People, 53 N. Y. 111.

Where a sale of a chattel is intended, although such sale is induced by fraud, there is no larceny, since the seller intends to pass the title. Zink v. People, 77 N. Y. 114.

Where a loan of money is obtained by fraud, the borrower is not guilty of larceny. Kelly v. People, 6 Hun, 509.

## SAME—BY STATUTE.

Obtaining goods under false pretenses is made larceny by statute, so although the title passes in such a case, it is nevertheless larceny in spite of the common law rule to the contrary. People v. Rice, 128 N. Y. 649.

## FROM WHOM PROPERTY TAKEN.

One who steals from a thief is guilty of larceny. Ward v. People, 3 Hill, 395.

Where personal property of one is, through inadvertence, left in the possession of another, and the latter *animo furandi* conceals it, knowing it to be the property of another, his possession will not protect him from the charge of felony, and he is guilty of larceny. People v. McGarren, 17 Wend. 458.

It seems that where property is found in the highway, and the finder knows the owner, or there be any mark upon it whereby the owner may be ascertained, and the finder, instead of restoring it, converts it to his own use, such conversion will constitute a felonious taking. People v. M'Garren, 17 Wend. 458.

## SAME—LOST ARTICLES.

Where goods are found under such circumstances that there is no

clue to the ownership whatever, and no reasonable expectation that the true owner will find the goods, the finder has a legal right to take the same for his own use, and there is no larceny. People v. Seaton, 15 Suppl. 270.

A finder who has no clue to the ownership does not commit larceny if he converts the articles to his own use. People v. Cogdell, 1 Hill, 94.

Domestic animals found straying are generally regarded as possessing a clue to the ownership thereof. People v. Kaatz, 3 Park. Crim. 129.

## CONSENT OF OWNER.

One who by fraud obtains the owner's consent to the taking of property, with intent to steal the same, commits larceny. People v. Miller, 169 N. Y. 339, 16 N. Y. Crim. 281.

The offense of larceny at common law is established by proof showing that the defendant obtained possession of the property by some trick, fraud, or fraudulent device or artifice, *animo furandi*, with the intention at the time of subsequently appropriating the same to his own use. People v. Miller, 169 N. Y. 339, 16 N. Y. Crim. 281.

The obtaining of money from the owner to be used for the owner in a certain way, with intent to steal it, is larceny. People v. Hackett, 175 N. Y. 503. Mem.

The obtaining money from the owner with the ostensible purpose of making a bet with it, with intent to steal it, is larceny. People v. Loomis, 67 N. Y. 322.

Likewise if the ostensible purpose is to secure the release of the husband of the owner from prison. Smith v. People, 53 N. Y. 11. .

Or to use as a partnership contribution. People v. Hughes, 91 Hun, 354.

Or to carry to a foreign country. Macino v. People, 12 Hun, 127.

Or to use in prosecuting a claim. People v. Dean, 12 Suppl. 749.

## SAME—MISTAKE.

One overpaid by mistake, who, knowing of the mistake, retains the money, held guilty of larceny. Wolfstein v. People, 6 Hun, 121.

THE INTENT.

Intent is an essential element of the crime. Parr v. Loder, 97 App. Div. 218.

Where the intent does not exist at the time of the taking, neither its subsequent formation nor any appropriation of the property afterwards will make the larceny complete. Wilson v. People, 39 N. Y. 459.

Whether the intent existed at the time of the taking is always a question for the jury. People v. Pollock, 51 Hun, 613.

Taking openly, as a mere joke, and without criminal intent, held no larceny. Devine v. People, 20 Hun, 98.

One who takes under a bona fide claim of right so to do having no intent to steal, cannot be held guilty of larceny. People v. Ouley, 7 N. Y. St. Rep. 794.

One is guilty of larceny in withholding property from its true owner where he withholds it with an intent to deprive him of the property, and it is not essential that he intends to commit a crime, for the crime consists of intentionally doing an act prohibited by the statute. Greene v. Fankhauser, 137 App. Div. 124.

Where a detective accompanied a thief, pretending to be his accomplice, and apparently takes part in the act of taking, there being no felonious intent, he is not guilty of larceny. People v. Mills, 178 N. Y. 274, 18 N. Y. Crim. 269.

Where one unlawfully takes the horse of another for the purpose of riding it, and leaves it within a reasonable distance so that the owner may retake it, there is no larceny. Jeffers Case, 1 City Hall Records, 83.

Taking papers in order to delay the taking of a deposition is not larceny. Parr v. Loder, 97 App. Div. 218.

Where a salesman, whose sample trunk belonging to employer was held for a hotel bill, was given money to pay the hotel bill and release the trunk, with orders to do so, took sick, and neglected to carry out instructions, such action does not constitute larceny. Lathrop v. Mathers, 143 App. Div. 376.

President of a domestic mutual benefit insurance association is not guilty of larceny in paying an undisputed obligation of the association out of a fund which, according to the by-laws, was applicable to the payment of any " legitimate indebtedness against the association." People v. Lumbert, 148 App. Div. 444, 27. N. Y. Crim. 85.

DEFENSES.

An agreement to return the property stolen is not a defense. People v. Gottschalk, 66 Hun, 64, 10 N. Y. Crim. 254.

One selling goods under an agreement that he is to have fifty per cent. of the profits on goods sold by him, his employer to advance him thirty-five dollars a week to be accounted for in the division of the profits, and that any checks for merchandise sold may be made payable to him, he to immediately endorse them over to his employer, cannot defend a charge of larceny for appropriating a check to his own use received for goods sold, on the theory that he is a partner. People v. Hopkins, 126 App. Div. 843, 22 N. Y. Crim. 425.

Where the director of a corporation appropriates corporate funds to political purposes, in the absence of evidence establishing a felonious intent, there is no larceny. People ex rel. Perkins v. Moss, 187 N. Y. 410, 20 N. Y. Crim. 569.

BY AGENT.

Where a jeweler, having received a necklace from another jeweler for the purpose of finding a customer under a memorandum stating that the jewel was delivered for inspection and was to remain the property of the person lending it to be returned on demand, subsequently pawns the jewel and appropriates the proceeds, he is guilty of grand larceny, first degree. People v. Weber, 130 App. Div. 593, 23 N. Y. Crim. 331.

A commercial traveller who, on the termination of his employment, deducts from moneys collected for his principal the amount of unfounded claims for arrears in salary and expenses is guilty of larceny, these not being appropriated under a claim of title but under a claim of indebtedness. Matthews v. Employers, etc., 127 App. Div. 195.

PARTIES TO THE CRIME—PRINCIPALS.

Where one party brings the property stolen to a certain place, where his confederate takes it and makes off with it, since the whole constitutes one transaction in which both take a part, both are guilty as principals. People v. Wiley, 20 Suppl. 445.

If one helps the actual taker by bringing the victim to him or by holding the attention of the victim while the goods are taken he is a joint principal. St. Valerie v. People, 64 Barb. 426.

Where larceny is committed by means of a trick in which several

parties are concerned, all such parties are principals. People v. Putnam, 90 App. Div. 125.

One who is apparently acting in concert with the participants in a crime, but is really acting as the agent of the police in detecting them, is not a party thereto. People v. Mills, 178 N. Y. 274; 18. N. Y. Crim. 269.

But a private detective who induces a thief to steal goods, so that he may obtain a reward which has been offered by the owner thereof, has been held to be a party to the crime. People v. McMurray, 4 Park. Crim. 234.

CLAIM OF TITLE.

Where the lessee of a farm bid in a cow at public auction and his lessor signed a note for the purchase price, owing to the vendor's refusal to deliver to the vendee without such security, with an understanding that the cow should belong to the lessor if he were compelled to pay the note, he cannot be held guilty of larceny because he openly took the cow on paying the note after the failure of the lessee to do so, even though the lessee contends that he afterwards paid the lessor. It is a sufficient defense to a charge of larceny that the property was appropriated openly and avowedly under a claim of title made in good faith, though the claim be untenable. People v. Jones, 142 App. Div. 180, 25 N. Y. Crim. 439.

SAME—ACCESSORIES.

One who, knowing of the theft, assists in the escape of the thief, or in his making way with his booty, is an accessory after the fact. People v. Sanborn, 14 N. Y. St. Rep. 123.

DEGREES—GRAND LARCENY.

The value of the property is a material ingredient in the crime of grand larceny. People v. Griffin, 38 How. Pr. 475.

Larceny from the person is grand larceny. Fallon v. People, 2 Abb. Dec. 83.

SAME—PETIT LARCENY.

Petit larceny is a misdemeanor in this State, by statute. People v. Finn, 87 N. Y. 533.

Otherwise at common law. Ward v. People, 6 Hill, 144.

A second offense of petit larceny is a felony. People v. Rawson, 61 Barb. 619.

## SAME—VALUE OF PROPERTY STOLEN DETERMINES DEGREE.

Where the prosecution fails to show value of property to be above that required to make the crime grand larceny, the conviction must be for petit larceny. People v. Griffin, 38 How. Pr. 475.

## ATTEMPTS.

Where an attempted larceny is successful, there can be no conviction for the attempt. People v. Mills, 178 N. Y. 274, 18 N. Y. Crim. 269.

An attempt to pick a pocket is a crime, though there was nothing in the pocket to steal. People v. Moran, 123 N. Y. 254, 8 N. Y. Crim. 105.

## CRIMES SIMILAR TO LARCENY—BY BAILEE.

Larceny by bailee a statutory crime, being another method of dealing with the crime commonly called embezzlement. People v. Dempsey, 105 App. Div. 505.

The misuse of property, the legal title to which was in the defendant, is not covered by the statutes respecting larceny by a bailee. People v. Thomas, 83 App. Div. 226.

Where one has collected money for another, and misuses it, he is guilty of larceny. People v. Civille, 44 Hun, 497.

If there is a conversion after bailment, the act contemplated by the statute is completed. People v. Evans, 69 Hun, 222.

The intent to steal must exist at the time of the conversion. Moss v. Cohen, 158 N. Y. 240.

Obtaining money by false pretenses is made larceny by statute. People v. Rothstein, 42 Misc. 123.

## INDICTMENT—FORMS OF.

For forms, see People v. Miller, 169 N. Y. 339, 16 N. Y. Crim. 281; People v. Lammerts, 164 N. Y. 137, 15 N. Y. Crim. 158.

A statement that moneys were feloniously taken is a sufficient state-

ment of a criminal intent on the part of the taker.  People v. McLaughlin, 70 Misc. 191, 25 N. Y. Crim. 283.

That an indictment for grand larceny in the second degree sets forth substantially the same facts in a second count in such a manner as to constitute a lesser offense does not vitiate it as for grand larceny second degree, and a demurrer thereto on the ground that the facts charged do not constitute a crime is properly over-ruled.  People v. Wright, 133 App. Div. 133, 23 N. Y. Crim. 560.

## SAME—SURPLUSAGE.

Additional unnecessary averments will not harm the indictment if it is not rendered thereby so prolix as to prejudice the defendant in making his defense.  People v. Laurence, 137 N. Y. 517, 10 N. Y. Crim. 331.

## SAME—DESCRIPTION OF GOODS STOLEN.

Where an offense is substantially set forth in the indictment a matter of description may be omitted where a good excuse for such omission is given, as that a fuller description is unknown.  People v. Dimick, 107 N. Y. 13, 5 N. Y. Crim. 185.

Unnecessary in charging theft of a written instrument to allege that there is money due upon it.· Phelps v. People, 6 Hun, 401.

Or in the case of bank-notes, that the bank was legally incorporated. People v. Jackson, 8 Barb. 637.

Promissory notes being the subject of larceny only by statute an indictment for stealing them must conclude *contra formam statui.* People v. Cook, 2 Park. Crim. 12.

Sufficient to describe money as "so much money," without specifying particularly the kind of money.  People v. Reavey, 38 Hun, 418.

It has been held necessary to describe money by the denomination of the separate pieces.  Low v. People, 2 Parker Crim. 37.

And where the denomination is unknown an allegation to that effect has been held necessary.  People v. Spencer, 27 Misc. 491.

Under an indictment for the larceny of money, the stealing of a check or draft for the payment of money may be proved.  People v. Lammerts, 164 N. Y. 137, 15 N. Y. Crim. 158.

Coin is properly described as copper or silver coin of the United States of a certain value.  Miller v. People, 21 Hun, 443.

A charge of stealing " gold certificates " held good.  People v. Dunn, 53 Hun, 481, 7 N. Y. Crim. 173.

In the case of bank-notes, it was formerly customary to give the name of the bank or allege that it was unknown.  People v. Jackson, 8 Barb. 637.

## SAME—PLACE OF CRIME.

The place where the crime was committed must be alleged in the indictment, in order to fix the venue.  People v. Horton, 17 Suppl. 1.

The exact place stated need not be proved.  It is sufficient if a place within the jurisdiction of the court is established.  People v. Honeyman, 3 Den. 121.

Where goods are stolen in one county or State and brought by the thief into another county or State, an indictment for theft in the latter county may allege a theft in that county, without setting forth the original taking.  Haskins v. People, 16 N. Y. 344.

## SAME—VALUE.

An indictment for grand larceny must state the value.  People v. Willet, 102 N. Y. 251, 4 N. Y. Crim. 200.

Such allegation must be sufficiently certain.  People v. Peckens, 153 N. Y. 576, 12 N. Y. Crim. 433.

The value of current money need not be stated.  People v. Evans, 143 N. Y. 638.

In the case of a check, draft, or promissory note, the description of the instrument itself is sufficient to fix its value.  Phelps v. People, 72 N. Y. 334.

## SAME—OWNERSHIP.

An allegation that defendant took the money from the money drawers of said deponent's said store, held a sufficient allegation and equivalent to a statement that he took the money out of the possession of the deponent.  People v. Smith, 86 Hun, 485.

An allegation that the property stolen was " the goods and chattels " of the person named as owner, held sufficient.  People v. Holbrook, 13 Johns. 90.

The allegation of ownership or a variance therein may be made immaterial by statute. People v. Kellogg, 105 App. Div. 505.

The ownership of property may be laid in the bailee from whom they were stolen. People v. Smith, 1 Park. Crim. 329.

A thief in possession may be described as the owner where the goods have been stolen from him by a second thief. Ward v. People, 3 Hill, 395.

Where a person named as one of the owners of property has no interest therein, but only in the profits arising therefrom, he is erroneously named as owner in an indictment. People v. Romaine, 1 Wheel. Crim. 369.

Property belonging to the State in the hands of the State treasurer may be described as the property of the State. People v. Phelps, 49 How. Pr. 437.

## SAME—FOR ALLIED OFFENSES.

Indictment for larceny by bailee held sufficient if it covers the facts forbidden by the statute. Matter of Dempsey, 32 Misc. 178.

## VARIANCES.

A charge of larceny of bills is not supported by proof of the stealing of bills or notes payable in current bills but not in money. Linnenden Case, 1 City Hall Rec. 30.

An indictment for grand larceny for stealing property of more than twenty-five dollars in value, is not sustained by proof of theft of property of less than twenty-five dollars in value from the person, even though stealing from the person be grand larceny regardless of the value of the stolen property, since grand larceny by stealing from the person is not described in the indictment. Rhodidan v. People, 5 Park. Crim. 395.

Under an indictment for larceny from the person, a conviction for simple larceny may be had. People v. McGowan, 17 Wend. 386.

At common law, under an indictment for larceny, a conviction for obtaining goods under false pretenses cannot be had. People v. Dumar, 106 N. Y. 502, 8 N. Y. Crim. 263.

Not a fatal variance from an indictment in the common law from charging the defendant with feloniously taking vi et armis the money of the complainant, where the proof shows that the defendant and his

confederates used a trick or device to induce the complainant to produce his money and entrust it to them for counting, and having so obtained possession of the money, ran away with it. People v. Henry, 127 App. Div. 489, 22 N. Y. Crim. 537.

EVIDENCE.

Parol evidence of the contents of stolen notes may be given without accounting for their non-production. People v. Holbrook, 13 Johns. 90.

Mere hearsay cannot be shown. Wiggins v. People, 4 Hun, 540.

Evidence that defendant committed another theft, either before or after the crime charged, held inadmissible. People v. Justices, 10 Hun, 158.

Where two thefts were committed on the one occasion, evidence of the theft not charged may be received as part of the *res gestae*. Haskins v. People, 16 N. Y. 344.

Or to prove the intent where that is denied. People v. Hughes, 91 Hun, 354.

Evidence of similar previous transactions may be given to prove intent. People v. Luke, 9 St. Rep. 638.

Evidence on the part of the defendant may be introduced which tends to disprove the existence of a criminal intent. People v. Seldner, 62 App. Div. 351.

And defendant may contradict the terms of a written instrument, to disprove intent. People v. Barringer, 76 Hun, 330, 9 N. Y. Crim. 178.

Where defendant claimed that the property found in his possession and claimed to be stolen was his own, and used by him as a sample in selling, evidence that he had at about that time sold such property to various persons was admissible. People v. Crapo, 76 N. Y. 288.

Where defendant claimed to have been acting in good faith for a third party, the prosecution may show in rebuttal that the other party would not have had dealings with defendant. Ellis v. People, 21 How. Pr. 356.

SAME—SUFFICIENCY.

Evidence held sufficient. People v. Walker, 178 N. Y. 563.

Evidence of pawning the goods held sufficient evidence of appropriation thereof. People v. Hazard, 28 App. Div. 304.

Bank-notes other than United States treasurer notes or greenbacks will be required to be proved genuine notes in order to prove their value. Johnson v. People, 4 Den. 364.

And after sentence the bills will be presumed genuine, in the absence of evidence to the contrary. Higgins v. People, 7 Lans. 110.

The method of proving value of a bank-note is to prove its actual circulation as currency. Johnson v. People, 4 Den. 364.

The felonious intent must be proved, and its existence is a question for the jury. Ellis v. People, 21 How. Pr. 356.

Where the jury is not justified upon the evidence in finding that the felonious intent exists, a conviction cannot be sustained. People v. Goldberg, 20 App. Div. 444.

Where defendant is indicted for grand larceny in stealing several articles, but there is no sufficient evidence to show a taking of all the articles, there can be no conviction of the grand larceny unless the articles proved to be taken are shown to be worth more than the required amount. People v. Kehoe, 19 Suppl. 763.

Evidence of access by the defendant to the property stolen, connected with other suspicious circumstances, may justify a conviction. People v. Cassin, 16 N. Y. Suppl. 926.

Where defendant jostled against the complaining witness who at once found that his pocket had been picked, this may justify a conviction. People v. Wilkinson, 60 Hun, 582.

Mere opportunity, without other circumstances pointing towards defendant, held not sufficient to justify a conviction. People v. Gillett, 76 Hun, 611.

The fact of recent possession of the articles stolen is proper evidence against the possessor. Knickerbocker v. People, 43 N. Y. 177.

But not where there is no independent evidence of a theft of such property. People v. Caniff, 2 Park. Crim. 586.

The unexplained possession by defendant of the box and wrapper in which the stolen property had been packed, is evidence of the theft of the property itself. People v. Block, 15 Suppl. 229.

Possession will raise a presumption against the defendant, of itself, if he does not meet it by a reasonable explanation, and such presumption will justify a conviction. People v. Weldon, 111 N. Y. 569.

Possession of the stolen goods is evidence of guilt where good character is not shown. People v. Preston, 1 Wheel. Crim. 41.

But where the case is doubtful and good character is shown, evidence of possession is not sufficient to sustain a conviction. People v. Turrell, 1 Wheel. Cr. 34.

The presumption of guilt arising from possession is one of fact and not of law, and the jury must pass on all the evidence. Stover v. People; 56 Hun, 315.

And under no circumstances is it conclusive. People v. Sheaha, 1 Wheel. Crim. 188.

Unexplained possession justifies a conviction. Knickerbocker v. People, 43 N. Y. 177.

Such possession must be personal and exclusive. People v. Wilson, 151 N. Y. 403.

Evidence of possession of other stolen goods held inadmissible without evidence that such other goods were stolen, and at the same time. as the goods the stealing of which is charged in the indictment. Boland v. People, 19 Hun, 80.

Proof of the commission of the crime of obtaining money by false pretense, which constitutes statutory larceny, will not authorize a conviction under an indictment also charging common-law larceny. People v. Cohen, 148 App. Div. 205, 27 N. Y. Crim. 1.

As in a prosecution for grand larceny by an agent and bailee intent is essential, evidence that defendant at about the same time obtained jewelry from other persons under similar contracts and pawned it, is admissible. People v. Weber, 130 App. Div. 593, 23 N. Y. Crim. 331.

SAME—OF ACCOMPLICE.

In a prosecution for larceny in the first degree, for aiding and abetting another to commit a theft, testimony by a woman who actually committed the theft while employed as a domestic, that she was induced to do so by the defendant, is not corroborated by proof that the defendant enabled her to obtain her employment by forging a letter of recommendation, if. it did not appear that when she accepted the employment there was any mutual purpose to commit a crime. People v. Josephs, 143 App. Div. 534, 26 N. Y. Crim. 85.

SAME—OF OTHER CRIMES.

On the trial of an indictment charging the defendant with stealing a purse from a customer in a department store, it is error to admit

evidence that on a prior occasion the defendant in the same store jostled another person in an elevator and took her purse, that being a distinct crime in no manner connected with the crime charged. People v. Morral, 141 App. Div. 153, 25 N. Y. Crim. 190.

### SAME—BY CHECK.

To convict of larceny in obtaining money on a check by false pretenses as to its validity, it must be shown that the defendant obtained the money from the person whom he induced to cash the check with the intent to deprive him thereof or to appropriate the same to his own use, or that of another and that he obtained it by color or aid of false or fraudulent representations or pretense, or by aid of the check, and that the check was a false token or writing. People v. Ghiggeri, 138 App. Div. 807, 25 N. Y. Crim. 5.

(See also Note, on Larceny by Check, 25 N. Y. Crim. 9.)

Where a broker receives specific stock under an agreement to hold it as collateral, and pledges it as security, he is not necessarily guilty of larceny, but where he never incurred loss upon the transactions, as security for which the stock was pledged, but sold it the same day it was deposited and left the city with the proceeds, it may be inferred that the sale was made with guilty intent. People ex rel. Mansfield v. Flynn, 64 Misc. 278, 23 N. Y. Crim. 602.

### SAME—NOTES.

Where stolen notes were issues by a corporation, a going concern, by authority of the board of directors, and would be valid obligations in the hands of bona fide holders, the prosecution is not called upon to show that the notes had value, as they are presumed to have their face value by virtue of the express provisions of section 545 of the Penal Code. People v. Barry, 132 App. Div. 231, 23 N. Y. Crim. 447.

Error to admit evidence that the stolen property was returned to the complaining witnesses by an unidentified woman not shown to be in any way connected with the defendant. People v. Gerst, 137 App. Div. 272.

### SAME—SUFFICIENCY.

Where one defendant was shown to be present when the goods, consisting of shoes, were stolen; both were found in possession thereof; one defendant, when asked by police officer where he got the shoes, stated that he was told by the other defendant that if he came to his house he could get a cheap pair of shoes, which statement was confirmed by the other as true; held, evidence sufficient to justify a conviction. People v. Kipp, 121 App. Div. 692.

## TRIAL.

All controverted questions of fact must be left to the jury. People v. McCallam, 103 N. Y. 587.

It is error to direct the attention of the jury away from the real issue. People v. Van Dusen, 165 N. Y. 33, 15 N. Y. Crim. 238.

Where the grade of the offense of the sentence depends on the value of the property, the jury should be instructed to find the value. Rhodidan v. People, 5 Park. Crim. 395.

But see contra. Riley's Case, 12 Abb. Pr. 479.

Where the court frequently throughout the trial interrupts the examination of witnesses to ask questions, apparently for the sole purpose of disparaging and discrediting defendant, due administration of justice requires a reversal in order that defendant may have a fair and impartial trial. People v. Acardo, 140 App. Div. 529, 25 N. Y. Crim. 183.

It is not error to refuse to charge that the indictment should be based on evidence which removes all reasonable doubt, nor to refuse to charge that evidence of defendant's previous good character in and of itself raises a question of reasonable doubt, no matter how strong the evidence against him may be, in a case where no evidence of good character was offered. People v. Wright, 133 App. Div. 133, 23 N. Y. Crim. 560.

## PUNISHMENT.

Cannot be less than the minimum fixed by law. People v. McTamaney, 30 Hun, 505.

Matters in mitigation of punishment should be shown by defendant. Williams v. People, 24 N. Y. 405.

A judgment convicting a defendant of petit larceny not charged as a first offense is not illegal and excessive because it includes a provision that he be imprisoned at hard labor. People ex rel. Gainance v. Platt. 148 App. Div. 579, 27 N. Y. Crim. 82.

Where a defendant has pleaded guilty to grand larceny, second degree, as a first offense, the court has no power to impose a life sentence under section 1942 of the Penal Law, although it be shown by defendant's answer to interrogatories that he has been convicted and sentenced four times for felony. People v. Bretton, 144 App. Div. 282, 26 N. Y. Crim. 175.